INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AIRLINE DISTRICT 146, Plaintiff-Appellant,

v.

FRONTIER AIRLINES, INC., Defendant-Appellee.

No. 81-1283
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Dec. 23, 1981.

---

John E. Collins, Irving, Tex., for plaintiff-appellant.

James E. Hautzinger, Denver, Colo., for defendant-appellee.

Before GEE, GARZA and TATE, Circuit Judges.

TATE, Circuit Judge:

The issue before us concerns the jurisdiction of a district court to grant injunctive relief with regard to "minor" labor disputes that involve the interpretation of collective bargaining agreements and that are governed by the Railway Labor Act, 45 U.S.C. §§ 151 et seq.

The plaintiff International Association of Machinists and Aerospace Workers, Airline District 146 ("the union") sought a temporary restraining order, preliminary and permanent injunctive relief against the defendant Frontier Airlines, Inc. ("the carrier"), based on what the union contended were blatant violations of the collective bargaining agreement between the parties. The union alleged that the carrier's security officers commenced interrogating and questioning union members about conduct that could lead to discharge without giving them the benefit of union representation at such interrogation.

A hearing was held on the union's application for a temporary restraining order. The trial court ruled, and the union admitted, that this was a "minor dispute" under the Railway Labor Act, 45 U.S.C. §§ 151 et seq., ("Act") and therefore concluded that the court had no jurisdiction over the matter. The union appeals the dismissal of the suit. Finding that the trial judge lacked jurisdiction to issue an injunction against the carrier, we affirm the dismissal.

*Facts*

For purposes of this appeal, the facts may be described briefly. Security personnel employed by the carrier began to question union members about alleged drug problems on the carrier's premises. Union representatives immediately protested on the basis of an alleged violation of the collective bargaining agreement that existed between the carrier and the union that they claimed

required the presence of a union representative.[1] The questioning continued, and the carrier also requested that various union members sign statements indicating their lack of information about the use of marijuana on the carrier's premises. According to testimony at the hearing for the preliminary injunction, at least seven employees were consequently discharged or suspended.

The carrier has maintained throughout that questioning about the drugs by security officers, and not by supervisors of the employee being questioned, was not a disciplinary investigation covered by the contractual provision on disciplinary investigations; and that, therefore, the presence of a union representative at the questioning was not required.

The union immediately grieved the discipline imposed against its members following the questioning by security personnel. These grievances are proceeding through the grievance process and, failing settlement, will be arbitrated before an impartial arbitrator. In addition, the union instituted the proceedings that form the basis for the present appeal.

*"Major" and "Minor" Disputes: In General*

In 1936, Congress extended the application of the Railway Labor Act to the airline industry.[2] Section 2 of the Act states as two of its purposes:

1. The relevant provision of the collective bargaining agreement between the carrier and the union reads:

    e. Employees covered by this Agreement shall not be discharged or suspended from the service without a prompt, fair and impartial investigation and may be represented by Union representatives. At least forty-eight (48) hours prior to such investigation the employee and the Union shall be advised in writing of the precise charges against the employee. Such investigation shall be held within thirty (30) calendar days from date cause of investigation is evident and the Company shall render it's (sic) decision within ten (10) calendar days from date of investigation.

2. 45 U.S.C. § 181 extends the provisions of sections 151, 152, and 154 to 163 of the Railway Labor Act to airlines engaged in interstate or foreign commerce, contract carriers of mail for the United States Government, and pilots and other employees of such airlines.

(4) to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions ["major" disputes];

(5) to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions ["minor" disputes].[3]

These two types of disputes have come to be referred to as "major" and "minor" disputes, respectively, depending upon (a) whether they relate to disputes over the formation of collective agreements with regard to rates of pay or working conditions (or efforts to secure or change them), involving the large issues about which strikes ordinarily arise or (b) whether, instead, they concern issues as to whether an *existing* agreement controls the controversy, *i. e.*, the interpretation or application of a particular provision to a particular situation— these "minor" disputes being generically less likely to result in a strike interrupting traffic. *See Elgin, J & E Ry. Co. v. Burley*, 325 U.S. 711, 723–24, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945).

█ The Act provides different procedural consequences for their respective resolution.[4] Preservation of the status quo

The airline amendments, however, except from application to the airline industry section 153 of the Railway Labor Act, which established the National Railway Adjustment Board to provide mandatory arbitration on a national level for "minor" disputes within the railroad industry. In the airline industry, 45 U.S.C. § 184 provides that "[i]t shall be the duty of every carrier and of its employees, acting through their representatives, ... to establish a board of adjustment" that is similar to the mechanism provided for in section 153 of the Act.

3. 45 U.S.C. § 151a.

4. In both types of disputes, the parties must first attempt a voluntary settlement. If no settlement is reached, the procedures then differ. If the dispute is "major" then mediation, arbitration, and possible presidential intervention follows. *See* 45 U.S.C. §§ 155 (First) & 160. If the dispute is "minor," then, if the parties reach impasse, the grievance may be submitted to the National Railway Adjustment Board or a

through the resolution procedures is extremely important if the dispute is characterized as "major;" consequently, injunctive relief may be appropriate.[5]

However, injunctive relief is inappropriate in a "minor" dispute case, because the statutorily established grievance procedures are mandatory and exclusive. *See Andrews v. Louisville & Nashville Railroad Company,* 406 U.S. 320, 322–25, 92 S.Ct. 1562, 1564–65, 32 L.Ed.2d 95 (1972). The Act contains "no general provision prohibiting a party from acting unilaterally upon its interpretation of the contract pending exhaustion of the grievance procedures," if indeed the dispute is a "minor" one involving disagreement on the interpretation of a collective bargaining agreement, as to which strike action interrupting commerce is precluded by the statutory scheme. *Brotherhood of Locomotive Firemen and Enginemen v. Southern Pacific Company,* 447 F.2d 1127, 1132 (5th Cir. 1971). *See also Switchmen's Union of North America v. Central of Georgia Railway Company,* 341 F.2d 213, 216–17 (5th Cir.), *cert. denied,* 382 U.S. 841, 86 S.Ct. 41, 15 L.Ed.2d 82 (1965). For resolution of these minor disputes relating to the application or interpretation of an existing contract, the parties must resort to the mandatory and exclusive grievance procedures established by the Act. *Id.* Accordingly, a union may not sue for an injunction or damages concerning a "minor" dispute until after such dispute has been fully processed and disposed of in accordance with the grievance procedures established under the Act. *Andrews, supra,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95; *Switchmen's Union, supra,* 341 F.2d at 217.

*"Minor" Disputes: Injunctions to Preserve Jurisdiction*

■ The union in this case concedes that the dispute is a "minor" one, concerning the scope of protection provided by the contract to employees with respect to investigation by the carrier's security personnel. The union further contends that it did not wish the lower court to examine the merits beyond that required to determine whether to grant injunctive relief. The union argues that, although a "minor" dispute is involved, the district court nevertheless had jurisdiction to issue the injunction and the carrier should thereby be precluded from engaging in the investigation pending interpretation of the collective bargaining agreement, because the investigation is a unilateral charge that is disruptive of the process of orderly resolution established by the Act. The union refers us to the primary purpose of the Act—"[t]o avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof." 45 U.S.C. § 152 (First).

The union is correct in arguing that a number of cases have upheld the issuance of injunctions in "minor" disputes, but it fails to consider the very narrow ground upon which those cases have rested. In *Brotherhood of Railroad Trainmen v. Chicago River and Indiana Railroad Company,* 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957), the Supreme Court upheld an injunction against a union so as to prevent defeating the jurisdiction of the Railway Adjustment Board. *Chicago River* was extended in *Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R. Co.,* 363 U.S. 528, 80 S.Ct. 1326, 4 L.Ed.2d 1379 (1960), when the Supreme Court, in upholding an injunction against the unions, approved conditions placed upon the carrier that required it to maintain the status quo pending resolution by the Railway Adjustment Board. The Court was clear, however, that its reason for upholding the conditions placed on the carrier was the same as that which justified upholding

---

board of adjustment established by the parties. In the case of airlines, minor disputes are submitted to the grievance and arbitration mechanism established by the statute. *See* 45 U.S.C. §§ 153 & 184. *See also* note 2, *supra.*

**5.** In *Brotherhood of Locomotive Firemen and Enginemen v. Southern Pacific Company,* 447 F.2d 1127, 1131 (5th Cir. 1971), we stated that if the dispute was characterized as "major," then "while the Act's bargaining procedures are being exhausted, the union is prevented from striking and the carrier is prohibited from doing anything that would justify a strike."

the injunction against the union: the conditions were designed "not only to promote the interests of justice, but also to preserve the jurisdiction of the Board . . . . by preventing injury so irreparable that a decision of the Board in the union's favor would be but an empty victory." *Id.*, 363 U.S. at 534, 80 S.Ct. at 1330. The irreparable injury sought to be prevented in *Locomotive Engineers* was the railroad's changing from steam locomotives capable only of short runs to longer-range diesel locomotives, that altered radically the number and location of various wayfreight crews. The Court explicitly left unresolved the question whether the federal courts were empowered to actually enjoin a carrier from unilateral action independently of any suit by the carrier for equitable relief. *Id.*, 363 U.S. at 532, n.3, 80 S.Ct. at 1329, n.3.

▮ Later cases interpreting *Chicago River* and *Locomotive Engineers* have established three points. *First,* injunctions may issue to prevent strikes that would deprive the congressionally established grievance procedures of jurisdiction. *St. Louis Southwestern Railway Co. v. United Transportation Union (UTV),* 646 F.2d 230 (5th Cir. 1981); *Railway Express Agency, Incorporated v. Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers,* 437 F.2d 388 (5th Cir.), *cert. denied,* 403 U.S. 919, 91 S.Ct. 2230, 29 L.Ed.2d 696 (1971); *Flight Engineers' International Association, AFL–CIO v. American Airlines, Inc.,* 303 F.2d 5 (5th Cir. 1962), *appeal dismissed,* 314 F.2d 500 (5th Cir. 1963). *Second,* injunctions may issue to prevent the carrier from disrupting the status quo when doing so would result in irreparable injury of a magnitude that would render a decision in favor of the unions virtually meaningless, and consequently also deprive the grievance mechanism of jurisdiction. *Local Lodge 2144 v. Railway Express Agency, Incorporated,* 409 F.2d 312 (2d Cir. 1969). *See also Locomotive Firemen, supra,* 447 F.2d 1127, 1132 n.4 (5th Cir. 1971). *Third,* the determination of whether carrier action is serious enough to warrant jurisdiction-preserving injunctive relief is addressed to the equitable power of the court,

with review restricted as to whether there has been an abuse of discretion. *International Brotherhood of Teamsters v. Braniff International Airways, Inc.,* 437 F.2d 1272, 1275 (5th Cir. 1971).

In the present case, the union does not attempt to argue that the carrier's action rises to the level of disruption and irreparable injury reached in these cases where injunctive relief against the carrier has been upheld. For example, the carrier's action in investigating drug use, and dismissing some of the employees interviewed, is not comparable to the restructuring of the basic operation of the railroad that occurred in *Locomotive Engineers, supra,* or to the transfer by the railroad of its hub traffic to another city that occurred in *Local Lodge 2144, supra.* Rather, the union advances a policy-equity argument that, since the carrier may obtain injunctive relief against a strike by a union in a "minor" dispute, it is unfair to preclude the union from similar injunctive relief in "minor" disputes arising out of *any* unilateral change by the carrier. The Act does not prohibit the carrier's unilateral changes in the "minor" dispute context, however, so that injunctions issued in favor of the carrier in this context are to preserve the integrity of the statutorily established grievance procedure. On the other hand, not all unilateral changes by the carrier are disruptive of the jurisdiction of the grievance process, and injunctive relief is inappropriate where the grievance procedure is statutorily contemplated as the exclusive means of resolving such dispute.

The union additionally seeks to attack this particular practice—the investigation of employees without representation—on the basis that such practice is violative of national labor policy as espoused in *N.L.R.B. v. J. Weingarten, Inc.,* 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975) and *Lennox Industries, Inc. v. N.L.R.B.,* 637 F.2d 340 (5th Cir.), *cert. denied,* 452 U.S. 963, 101 S.Ct. 3113, 69 L.Ed.2d 974 (1981) (decisions arising under the National Labor Relations Act, 29 U.S.C. §§ 151 et seq., and not necessarily controlling where the issue is the

interpretation of differing provisions of the Railway Labor Act.) However, this argument by the union is addressed to the determination of the merits of the dispute, a matter that is properly province of the grievance and arbitration procedures established by the Act. *Andrews, supra,* 406 U.S. at 322–24, 92 S.Ct. at 1564–65; *Hunt v. Northwest Airlines, Inc.,* 600 F.2d 176, 178–79 (8th Cir.), *cert. denied,* 444 U.S. 946, 100 S.Ct. 308, 62 L.Ed.2d 315 (1979).

Finally, the union argues that the district court erred in basing its refusal of jurisdiction on *Andrews, supra,* because *Andrews* concerned an action for wrongful discharge brought in the state court, not a request for injunctive relief in the federal court. The union correctly characterizes the issue decided by *Andrews,* but its reading ignores that the holding of the Court—that the grievance and arbitration procedures provided for minor disputes in the Act are not optional, and must be followed—is equally applicable to a request for injunctive relief. The crucial point is that the federal courts are precluded from interfering with the grievance and arbitration process *unless* it is necessary to preserve the jurisdiction of that mechanism.

*Conclusion*

We find that the action taken by the carrier was not so egregious as to warrant judicial interference with the statutorily established grievance process, and that the district court did not abuse its discretion in refusing to issue a temporary restraining order. Accordingly, we AFFIRM the decision below.

AFFIRMED.