**BROTHERHOOD OF LOCOMOTIVE ENGINEERS, Plaintiff-Appellant,**

v.

**ST. LOUIS SOUTHWESTERN RAILWAY CO., Defendant-Appellee.**

No. 84–2110
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 15, 1985.

Ross & Kraushaar, Richard Kraushaar, Harold A. Ross, Cleveland, Ohio, Bray & Watson, Patrick M. Flynn, Houston, Tex., for Brotherhood.

Jay W. Dickey, Jr., Maxie G. Kizer, Pine Bluff, Ark., for Brotherhood and Robinson et al.

Crain, Caton, James & Womble, W.T. Womble, Houston, Tex., Wayne M. Bolio, Littler, Mendelson, Fastiff & Tichy, Robert S. Bogason, San Francisco, Cal., for defendant-appellee.

Before GEE, RUBIN, and TATE, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The Brotherhood of Locomotive Engineers seeks to set aside an arbitration conducted under the provisions of the Railway Labor Act on the ground that the arbitration panel appointed to consider a procedural question exceeded its jurisdiction by considering the case on the merits. It also contends that the railroad has interfered improperly with the procedure set up to determine whether employees who have been ill are physically fit to return to work, and asks us to enjoin further interference. Robinson, the employee who was the subject of the arbitration, originally filed a separate appeal complaining of the procedures followed. Because he has dismissed that appeal, we consider only the Brotherhood's appeal filed on behalf of Robinson and other union members. Affirming the district court, we conclude that the arbitration panel did not exceed its jurisdiction and that the remedy for the alleged interference with medical determinations must be sought in arbitration, not judicial injunction.

I.

The Brotherhood of Locomotive Engineers (Brotherhood) is a railway labor organization authorized by the Railway Labor Act[1] (the Act) to represent members of the locomotive engineer craft. St. Louis Southwestern Railway Company (the Cotton Belt) is a common carrier by railroad engaged in interstate commerce and subject to the Railway Labor Act.[2] The Cotton Belt and the Brotherhood are required by statute to engage in collective bargaining.[3] The obligation of railways and their employees to bargain collectively is the "heart" of the Act.[4]

The Act defines "major disputes" as those that relate to "the formation of collective agreements or efforts to secure them" and concern "the acquisition of rights for the future, not [the] assertion of rights claimed to have vested in the past."[5] It defines "minor disputes," however, as those that "concern issues as to whether an existing agreement controls the controversy, i.e.; the interpretation or application of a particular provision to a particular situation."[6]

The original Act did not require the submission of minor disputes to binding arbitration.[7] Employers and railway unions might refuse to establish arbitration tribunals and thus effectively preclude any dispute from reaching an arbitration board for decision. Moreover, adjustment boards established under the original Act were composed of an equal number of employer and union representatives, with no provision for the appointment of a neutral arbitrator. Not surprisingly, parties frequently deadlocked on those controversies that did reach the adjustment board. Since no provision was made for the appointment of a neutral arbitrator with the authority to issue a binding decision, grievances went unresolved.[8] Strike threats over accumulated grievances became commonplace. Contrary to the express goal of "avoiding any interruption of interstate commerce" through the voluntary adjustment of disputes, the original Act threatened to exa-

1. 45 U.S.C. §§ 151, 152.

2. 45 U.S.C. § 151.

3. 45 U.S.C. § 152.

4. *Chicago and North Western Railway Co. v. United Transportation Union*, 402 U.S. 570, 574, 91 S.Ct. 1731, 1734, 29 L.Ed.2d 187, 192 (1971).

5. *Elgin, J. and E. Ry. Co. v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886, 1894 (1945); 45 U.S.C. § 151a(4).

6. *International Ass'n of Machinists v. Frontier Airlines*, 664 F.2d 538, 540 (5th Cir.1981); 45 U.S.C. § 153(i).

7. 44 Stat. 577 (1926); *International Ass'n of Machinists v. Street*, 367 U.S. 740, 758–60, 81 S.Ct. 1784, 1794–95, 6 L.Ed.2d 1141, 1154–56 (1961).

8. *Elgin, J. and E. Ry. Co. v. Burley*, 325 U.S. 711, 726–27, 65 S.Ct. 1282, 1291, 89 L.Ed. 1886, 1896–97 (1945).

cerbate the very problems it was designed to solve.[9]

Dissatisfied with these arbitration procedures, railroads and railway unions pressed for major revisions of the Act. In 1934, Congress amended the Act and created the National Railroad Adjustment Board (the Board).[10] The amendments provided for the appointment of an equal number of union and employer representatives to sit on each division of the Board.[11] Unlike the earlier provisions, however, the amendments authorized the appointment of a neutral referee [12] with express authority to decide any controversy presented and to issue an award "final and binding upon both parties to the dispute." [13]

These amendments were intended to strengthen the position of the labor organizations.[14] In exchange for the right to compel the railroads to arbitrate grievances, the employees agreed to accept the decisions of the Board as final solutions to disputes.[15] The unions also accepted the awards as "final and binding" resolutions.[16]

Arbitration remedies under the Railway Labor Act "were intended by Congress to be the complete and final means for settling minor disputes." [17] Once a decision has been issued, the Act forecloses relitigation of the same issue in court.[18] Limiting judicial review of an arbitration decision is necessary if the arbitration procedures are to be effective: "Congress considered it essential to keep these so-called 'minor' disputes within the Adjustment Board and out of the courts.... The effectiveness of the Adjustment Board in fulfilling its task depends on the finality of its determinations." [19] Courts have consistently upheld the final and binding effect of railway arbitration awards against subsequent court challenge.[20]

The Brotherhood and Cotton Belt have a collective bargaining agreement that, *inter alia,* authorizes the railroad to restrict locomotive engineers in their duties if they have physical ailments that may hinder the safe operation of trains. An engineer whose work is restricted may invoke the contractual grievance procedures and appeal the decision to an examining panel of three physicians, one selected by the union, one by Cotton Belt, and the third selected by the other two physicians. Such a grievance is subject to the grievance and arbitration remedies contained in the Act.[21]

**9.** *Brotherhood of Railroad Trainmen v. Chicago River and Indiana R. Co.,* 353 U.S. 30, 35–37, 77 S.Ct. 635, 638, 1 L.Ed.2d 622, 626–27 (1957); Murphy, *Agreement on the Railroads—the Joint Railway Conference of 1926,* 11 Lab.L.J. 823, 832–36 (1960).

**10.** 45 U.S.C. § 153.

**11.** 45 U.S.C. § 153(a).

**12.** 45 U.S.C. § 153(*l*).

**13.** 45 U.S.C. § 153(m), (n).

**14.** *International Ass'n of Machinists v. Street,* 367 U.S. 740, 759–60, 81 S.Ct. 1784, 1795, 6 L.Ed.2d 1141, 1155–56 (1961).

**15.** *Union Pacific R. Co. v. Price,* 360 U.S. 601, 613, 79 S.Ct. 1351, 1358, 3 L.Ed.2d 1460, 1467 (1959); Hearings Before Senate Committee on Interstate Commerce on S. 3266, 73d Cong., 2d Sess. 33, 35, as quoted in *Brotherhood of Railroad Trainmen v. Chicago River and Indiana Railroad Co.,* 353 U.S. 30, 38–39, 77 S.Ct. 635, 639, 1 L.Ed.2d 622, 628 (1957).

**16.** 45 U.S.C. § 153(m).

**17.** *Brotherhood of Locomotive Engineers v. Louisville and Nashville Railroad Co.,* 373 U.S. 33, 39, 83 S.Ct. 1059, 1062, 10 L.Ed.2d 172, 177 (1963).

**18.** *Union Pacific Railroad Co. v. Price,* 360 U.S. 601, 616, 79 S.Ct. 1351, 1359, 3 L.Ed.2d 1460, 1469 (1959).

**19.** *Union Pacific Railroad Co. v. Sheehan,* 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354, 359 (1978).

**20.** *Gunther v. San Diego and Arizona Eastern Railway Co.,* 382 U.S. 257, 263, 86 S.Ct. 368, 372, 15 L.Ed.2d 308, 312 (1965); *Union Pacific Railroad Co. v. Sheehan,* 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354, 359 (1978); *Elgin, J. & E. Ry. Co. v. Burley,* 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1946); *Diamond v. Terminal Railway Alabama State Docks,* 421 F.2d 228, 235 (5th Cir.1970).

**21.** 45 U.S.C. § 153, *et seq.*

After Engineer F.C. Robinson underwent quadruple bypass surgery, he was released by his physician to return to full duty. After Cotton Belt's physician had examined Robinson, the railroad notified him that, because of his surgery, he was disqualified to work on the main line and was restricted to less remunerative yard service. Cotton Belt was following a "long-standing medical department policy" of restricting engineers with demonstrated coronary problems. Because Robinson was dissatisfied with the railroad's decision, the Brotherhood invoked the grievance procedure. A medical panel composed of Dr. Jenkins (selected by the Brotherhood), Dr. Wineland (selected by Cotton Belt), and Dr. Price (the neutral member) was selected. The panel, with Dr. Jenkins dissenting, refused to clear Robinson for return to main line service. Dr. Price stated in his opinion, "[b]ecause [Robinson's] occupation makes him responsible for the lives of numerous people and property, before clearance for duty, maximum exercise testing and visualization of the aortoco-coronary grafts has been recommended, and the patient has declined.... Under these circumstances, I would not clear him for return to duty as an engineer or any other hazardous duty."

After the panel's decision was announced, the Brotherhood learned that Dr. Hyder, a Cotton Belt employee, had sent an ex parte letter to Dr. Price, the neutral member, without notifying the Brotherhood, the Brotherhood-appointed doctor, or Robinson. This letter contained information about Robinson's medical condition, railroad working conditions and hazards, as well as Cotton Belt's reasons for restricting Robinson's duties. In addition, the Brotherhood asserted that Dr. Price was not selected by the doctor appointed by Cotton Belt, as required by the grievance procedure, but by Dr. Hyder.

The Brotherhood protested that the procedure followed by the medical panel had been improper. As a result, the Brother-

hood and Cotton Belt agreed to convene a procedural public law board to examine the alleged inequities in the medical panel's procedures and determine whether the dispute should be referred to a public law board for a new decision on the merits of Robinson's medical restriction. The Act provides for this two-stage adjudication by a public law board when jurisdictional or procedural issues are involved. In the first stage, a "procedural neutral" is appointed to determine all matters "with respect to the establishment and jurisdiction of the board." If the procedural neutral decides that, due to procedural irregularities, the medical panel's decision should be reviewed on the merits, a "merits neutral" is then appointed to determine a substantive award. The procedural board, Public Law Board 2901, concluded that although "Dr. Hyder should not have become involved in the three-doctor board in any manner," the record was "barren of evidence" that would support the Brotherhood's "serious charges" and "[t]here is nothing to indicate that any member of the examining board was subjected to undue pressures or that the majority decision was obtained by fraud or other improper means." The district judge correctly characterized Dr. Hyder's letter to Dr. Price as an attempt "to compromise the panel." The propriety of Dr. Hyder's action and whether it tainted the procedures of the medical panel were matters for review by the procedural public law board. After review of the procedure followed, that board decided that the dispute was not referable to a public law board for reconsideration on the merits.

## II.

■ Federal courts, of course, have jurisdiction to review the awards of public law boards.[22] The scope of review, however, is narrow, and, in cases involving enforcement of Board decisions under the Act, has been referred to as "among the

---

**22.** 45 U.S.C. § 153(p) and (q). *See Merchants Despatch Transportation Corp. v. Systems Federation,* 551 F.2d 144, 146–47 (7th Cir.1977); *Em-* *ployees Protective Ass'n. v. Norfolk & W. Ry. Co.,* 511 F.2d 1040, 1045 (4th Cir.1975).

narrowest known to the law." [23]  Judicial review is limited to (1) failure of the Board to comply with the Act; (2) fraud or corruption; or (3) failure of the Board to confine its order or award to matters within its jurisdiction.[24]  To these three statutory exceptions several circuits, including the Fifth, have added an exception that we consider implied: judicial review is required when a board denies a litigant due process and thus acts in an unconstitutional manner.[25]  The findings of the Board are otherwise conclusive on this court.[26]  Our jurisdiction to review the arbitral awards of public law boards is equally restricted.

■ The Brotherhood contends that in the Robinson case the neutral member of the procedural public law board improperly inquired into the merits and thus went beyond that board's jurisdiction.  The board's opinion, however, expressly states, "[i]n reaching this decision, we are not, of course, passing upon the merits of the medical opinions of the three physicians." As the district court observed, while the board did review some of the evidence presented first to the medical panel, this was in an effort to determine whether the neutral doctor on the panel was unduly influenced, a procedural question properly before the board.

■ The Brotherhood's contention that Board 2901 denied due process to Robinson and his union also lacks merit, as it is based on the same erroneous thesis that Board 2901 decided the merits of Robinson's case without providing him an opportunity to argue the merits.  As we have stated, Board 2901 did not decide the merits of the medical restriction.  There is no allegation of any other irregularity in the procedural board's proceedings.  The course taken in this case was entirely in accord with the purpose of the Act—to resolve disputes by arbitration rather than

strikes or litigation.  Board 2901 acted within its jurisdiction for it decided the precise issue referred to it.

■ In essence, the Brotherhood complains that Cotton Belt engaged in a course of conduct designed to compromise or destroy the grievance-arbitration process. This issue is itself appropriate for arbitration, and if a violation of the collective bargaining agreement is shown, the arbitrators may determine the remedy.  There is, therefore, no need to enjoin possible future acts of interference by Cotton Belt or its employees.  Resort to judicial injunction to circumvent the decision of Board 2901 would subvert the purpose of the Act.[27]

■ The Brotherhood also bases its request for injunctive relief on a dispute regarding the duty status of Engineer J.H. Counts.  Counts underwent coronary artery bypass surgery.  After he was released by his physician to return to unrestricted duty, Dr. Hyder wrote to a cardiovascular consultant asking him to examine Counts.  In that letter, Dr. Hyder stated that Counts had sustained a myocardial infarction.  The Brotherhood contends that this was an erroneous assumption and that Counts had never suffered a myocardial infarction.  After examining Counts, the consultant released him for unrestricted duty.  Nevertheless, Cotton Belt restricted Counts' duties.

Although Counts clearly had the contractual right to challenge the restriction on his duties through the procedure set forth in the collective bargaining agreement, he declined to do so.  The examination performed by Cotton Belt's consultant was not an opinion binding on both parties and it was not pursuant to a medical board procedure.  It resulted from a unilateral request by Cotton Belt.  After the complaint in this

---

**23.** *Diamond v. Terminal Railway Alabama State Docks,* 421 F.2d 228, 233 (5th Cir.1970).

**24.** *Id.;* 45 U.S.C. § 153(q).

**25.** *Southern Pacific Co. v. Wilson,* 378 F.2d 533 (5th Cir.1967).

**26.** *Diamond v. Terminal Railway Alabama State Docks,* 421 F.2d 228, 233 (5th Cir.1970).

**27.** *E.g., International Association of Machinists v. Frontier Airlines,* 664 F.2d 538 (5th Cir.1981).

case was filed, the Brotherhood and Cotton Belt agreed to submit the Counts dispute to a public law board. The Brotherhood contends, however, that Dr. Hyder's actions have so poisoned the three-doctor decisional process that an injunction against future interference in the Counts proceedings is warranted.

Judicial intervention in advance of a decision by a public law board on the Counts dispute would subvert both the grievance procedure and the Act. If the Brotherhood believes that Dr. Hyder has interfered or will interfere with the public law board's disposition of the Counts dispute, it may challenge that action through the grievance procedure.

For these reasons, the judgment is AFFIRMED.