## ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS, Plaintiff–Appellant,

v.

## AMERICAN AIRLINES, INC., Defendant–Appellee.

No. 87–1407.

United States Court of Appeals, Fifth Circuit.

April 27, 1988.

Gilbert Feldman, Cornfield & Feldman, Chicago, Ill., Carin Clauss, Joann Peters, Dallas, Tex., for plaintiff-appellant.

Edward L. Kemble, Cantey, Hanger, Gooch, Munn & Collins, Forth Worth, Tex., Garry G. Mathiason, Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., Richard A. Malahowski, Maureen F. Moore, Dallas/Ft. Worth, Tex., for defendant-appellee.

Before THORNBERRY, GEE and POLITZ, Circuit Judges.

GEE, Circuit Judge:

The Association of Professional Flight Attendants (APFA) appeals a ruling by the district court denying its request for a preliminary injunction. APFA had sought an injunction requiring American Airlines to allow flight attendants to wear a particular insignia button while on duty: one which indicated disapproval of the "B" scale wage rates which the airline sought to pay. The district court held that it was without jurisdiction to grant the preliminary injunction because the dispute was "minor" and thus subject to the exclusive jurisdiction of the System Board of Adjustment. This appeal questions the characterization of the dispute as minor and the appropriateness of the administrative forum to which the dispute has been referred. For the reasons stated below, we affirm the holding of the district court.

*Facts*

APFA is the union that represents the flight attendants employed by American Airlines. APFA and American have been engaged in unsuccessful negotiations to amend their collective bargaining agreement. In order to generate public support for its opposition to a separate wage scale

for new hires (known as a "B scale"), APFA issued red and white buttons to flight attendants. These approximated the size of a quarter and featured a red slash through the letter B. Thus the button, rather than merely identifying its wearer as a union member, communicated one of the union's bargaining demands in its 1987 negotiations with American.

Early in 1987, American informed the union that it would not permit wearing of the "B" pin on the company uniform, threatening to discipline any flight attendant who wore the button while on duty. As reasons for this policy, it suggested that the button would promote controversy among the passengers, would distract other employees while they were on duty, and would prompt questions from passengers and thus divert flight attendants from their primary tasks. American pointed out a variety of other measures available for communicating the union's message to the general public and to other employees, measures such as wearing the button off-duty, handing out literature at the airport, and alerting other employees through American's mailbox system. The airline's stated policy, thus, was to regulate the use of the button on duty so as to promote efficient service and insulate its customers from the dispute.

APFA sued to enjoin this policy of regulating the use of the "B" button under the authority of the RLA. *See* Railway Labor Act, Section 2 (fourth), 45 U.S.C. § 152 (fourth). The trial court denied the union's petition for injunctive relief and entered an order of dismissal, holding that it lacked jurisdiction over the union's claim under the RLA because the collective bargaining agreement provided the exclusive administrative remedy for that category of dispute. *See* RLA, 45 U.S.C. §§ 153, 184. In addition, the court found that American Airlines had a legitimate business reason for its policy regulating the wearing of the button and the right, under the collective bargaining agreement, to require that flight attendants abide by the regulations regarding uniforms.

### The Regulatory Scheme

The APFA sought an injunction under Section 2, (fourth) of the RLA in order to prevent the airline from interfering with the employees's right to wear a union button while on duty. That section requires that carriers not deny employees their right "to join, organize, or assist in organizing the labor organization of their choice...." R.L.A. Section 2 (fourth), 45 U.S.C. § 152 (fourth).

Section 204 of the RLA provides:

[D]isputes between an employee or group of employees and a carrier or *carriers by air* growing out of grievances, or out of the interpretation or application of agreements *concerning* rates of pay, *rules,* or working conditions ... may be referred by petition of the parties or by either party to an appropriate *adjustment board....*

R.L.A., 45 U.S.C. § 184 (emphasis added).

The jurisdiction of these adjustment boards, to be set up by the carrier and its employees, is broad but not absolute. Despite some narrowly defined exceptions, however, Congress chose an essentially administrative system to resolve disputes under the RLA. As the Supreme Court concluded in adjudicating a tort claim under the RLA

The term "exhaustion of administrative remedies" in its broader sense may be an entirely appropriate description of the obligation of both the employee and carrier under the Railway Labor Act to resort to dispute settlement procedures provided by that Act. It is clear, however, that in *some situations* the Act makes the federal *administrative remedy exclusive,* rather than merely requiring exhaustion of remedies in one forum before resorting to another.

*Andrews v. Louisville & Nashville R. Co.,* 406 U.S. 320, 325, 92 S.Ct. 1562, 1565, 32 L.Ed.2d 95 (1972) (emphasis added). Thus in most situations the administrative process is the first and often the sole arbiter. Resort to the courts is, by implication, reserved for a small category of serious disputes. The problem exists, however, that different circuits, including our own, have

categorized the types of disputes that may be subject to court treatment under inconsistent labels. Such differences of form are in the dispute before us today.

In general, three types of disputes may arise under the RLA: 1) *Major disputes* which involve attempts to change "rates of pay, rules, or working conditions not adjusted by the parties in conference," 45 U.S.C. § 155 (first) (a); 2) *Minor disputes* which involve the " 'meaning or proper application of a particular provision' " in an "existing collective bargaining agreement," 45 U.S.C. § 153; and 3) *Representation disputes* which involve "the designation of union representatives." *See Independent Union of Flight Attendants v. Pan American World Airways*, 789 F.2d 139, 140–41 (2nd Cir.1986) (citations omitted).

Federal judicial intervention in minor disputes is limited to circumstances where the employer's conduct has been motivated by an "anti-union animus," where there is "discrimination or coercion against the representative," or where "acts of intimidation cannot be remedied by administrative means." *Id.* at 142 (citations omitted). These circumstances present situations where the essential framework for bargaining between management and the union has broken down. By contrast, where the dispute involves concerns *within* the bargaining context—such as interpreting the provisions of a collective bargaining agreement already arrived at—the administrative process offers the appropriate forum for resolving the dispute.

Although our Circuit and others have been clear that minor disputes are ordinarily to be handled through the administrative process, there are exceptions. In *International Association of Machinists and Aerospace Workers, Airline District 146 v. Frontier Airlines*, 664 F.2d 538 (5th Cir.1981), we set out the narrow grounds upon which injunctive relief for minor disputes was upheld. *Id.* at 541. First, injunctions may be issued "to prevent strikes that would deprive the congressionally established grievance procedures of jurisdiction." Second, injunctions may be issued "to prevent the carrier from disrupting the status quo when doing so would result in irreparable injury of a magnitude that would render a decision in favor of the unions virtually meaningless, and consequently also deprive the grievance mechanism of jurisdiction." Finally, injunctions may be issued upon the equitable power of this court when there has been an abuse of discretion by the district court. *See id.* at 542. Generally speaking, these exceptions to the limits on federal judicial power in minor disputes arise only when the administrative mechanism that Congress confected breaks down. If the administrative process is available, minor diputes must be routed through it.

### Application

The APFA and American Airlines are involved in a "minor" dispute. The conflict over the right to wear the "B" button on duty does not threaten the ability of the union to *represent* the flight attendants since there are both other times and places that the button can be worn, and other channels such as mail and leaflets that enable the union to influence public opinion. The right to wear the button is also not a *major* dispute since it involves a rule that *was* "adjusted by the parties in conference." Moreover, the rule in question does not relate to the formation of the collective bargaining agreement. Rather, the dispute involves an interpretation of a provision of the collective bargaining agreement. As such, it is a "minor" dispute that must be resolved exclusively through the administrative system.

Article 5–A of the collective bargaining agreement between the APFA and American Airlines provides that "flight attendants shall wear standard uniforms in such manner and as prescribed in Company regulations at all times while on duty and such other times as may be required." Article 5–A looks to Section 5–2 of the Flight Attendant Reference Manual which discusses uniform regulations. Section 5–2 identifies precisely what pins may be displayed. Section 5–2 states, "[S]ubject: *Union Pin.* The *authorized* pin may be worn ½ inch above the wings or on the coat collar. The regulations preclude the wearing of any

accessories that are not explicitly authorized." (emphasis added).

The crux of the dispute, thus, involves the interpretation of these provisions. It is clear that the collective bargaining agreement requires that, to be worn on the uniform, pins or buttons must be authorized ones. This requirement was part, and a clearly permissible part, of the overall bargain. In fact, it is accepted that as long as there is fair representation, a union may bargain away any of its members's rights. The only exception to this wide range of bargaining power is that a union "may not surrender rights that impair the employees' choice of their bargaining representative." *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 705–06, 103 S.Ct. 1467, 1476, 75 L.Ed.2d 387 (1983). As a result, consistent with its rights under the collective bargaining agreement, American Airlines informed the union on March 31, 1987 and the flight attendants on April 6, 1987 that the "B" button would not be authorized and that flight attendants would be prohibited from wearing it on duty. Although the union questions whether the "B" button could be regulated, such a claim depends on one's interpretation of the bargaining agreement —a task exclusively for the System Board of Adjustment.

In order for us to have jurisdiction to grant injunctive relief in this "minor" dispute, the circumstances would have to be such that the dispute would fall under one of the exceptions we noted in *Frontier Airlines*. This is not such a case: The appropriate administrative process still functions; no irreparable injury will result from a disruption of the status quo; finally, there has been no abuse of discretion by the district court. In this case, the dispute occurs within the bargaining framework and thus must be routed through the administrative process.

### *Conclusion*

Congress has set up a predominantly administrative system to process disputes between management and unions arising under the RLA. Minor disputes and major disputes that reflect aspects of the collective bargaining arrangement must be channelled either exclusively or in the first instance through the System Board of Adjustment that the RLA authorizes.

This B–button dispute is a minor dispute in that it turns on an interpretation of the collective bargaining agreement. It is a dispute that does not threaten the bargaining framework itself. *See REA Express v. Brotherhood of Railway, Airline and Steamship Clerks*, 459 F.2d 226 (5th Cir. 1972). Indeed, we have pointed out that if a "court finds an arguable basis it *must* defer to the expertise of the Adjustment Board." *Id.* at 231 (emphasis added). Because it is arguably a minor dispute, the System Board of Adjustment provides the exclusive remedy. As a result, the district court was without jurisdiction to grant injunctive relief and its decision declining to do so is hereby

AFFIRMED.