**ASSOCIATION OF FLIGHT ATTENDANTS, AFL–CIO, Plaintiff–Appellant,**

v.

**HORIZON AIR INDUSTRIES, INC., Defendant–Appellee.**

**No. 00–35129.**

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 19, 2001 *

Filed Feb. 5, 2002.

Edward J. Gilmartin, Association of Flight Attendants, AFL–CIO, Washington, DC, for the plaintiff-appellant.

William B. Knowles, Law Offices of William B. Knowles, Seattle, WA, for the plaintiff-appellant.

Michael R. Scott and Eric D. Lansverk, Hillis Clark Martin & Peterson, P.S., Seattle, WA, for the defendant-appellee.

Before: KLEINFELD and GOULD, Circuit Judges, and ROLL, District Judge.**

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2)(C); Ninth Circuit Rule 34–4.

ROLL, District Judge.

The issue presented on appeal is whether the district court properly dismissed Appellant Association of Flight Attendants' (AFA) complaint seeking declaratory and injunctive relief under the Railway Labor Act (RLA), 45 U.S.C. § 152, Fourth.[1] The district court dismissed AFA's complaint for lack of subject matter jurisdiction, concluding that the dispute was within the scope of a collective bargaining agreement (CBA) and, therefore, subject to arbitration. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Matthew Mann, a flight attendant for Horizon Air Industries, Inc. (Horizon), was ordered by a Horizon supervisor to remove an AFA union pin from his uniform on the second day of his three day work assignment. When Mann refused, Horizon suspended him for the remainder of his work assignment without pay. Mann was AFA's Local Council 17 President at the time.

In response to the discipline, AFA filed two grievances with the System Board of Adjustment (Board) pursuant to Article 22 of the AFA–Horizon collective bargaining agreement (AFA–Horizon CBA).[2] The AFA grievances protested the imposition of discipline and questioned whether the AFA–Horizon CBA prohibited Horizon flight attendants from wearing the AFA union pin while on duty. When briefing was completed in this matter, both grievances were pending before the Board.

** The Honorable John M. Roll, United States District Judge for the District of Arizona, sitting by designation.

1. The RLA applies to the airline industry. *See* 45 U.S.C. §§ 181–187.

In addition to filing the grievances, AFA also requested that Horizon stipulate that Horizon flight attendants had a statutory right under the RLA to wear the AFA union pins. When Horizon refused to stipulate, AFA filed a lawsuit in federal district court seeking declaratory and injunctive relief under Section 152, Fourth of the RLA. AFA argued that Horizon's policy interfered with Mann's statutory right to engage in union activities. Horizon filed a motion to dismiss for lack of subject matter jurisdiction, arguing that the dispute was encompassed by the AFA–Horizon CBA and, as such, was subject to the RLA's mandatory arbitration process. To support its position, Horizon referred to Article 11 of the AFA–Horizon CBA, which addresses uniform requirements for on-duty flight attendants:

Article 11

Uniforms

A. A Flight Attendant shall wear the standard uniform(s) as prescribed in Company regulations at all times while on duty.

B. From time to time, the Company shall set the standard uniforms to be worn by Flight Attendants, including the items supplied by the Company, those furnished by Flight Attendants and any optional items

. . .

1. Items supplied by the Company are as follows:

. . . .

1 insignia pin

2. Under Article 22, grievances concerning discipline or contract disputes are subject to a multiple step grievance process that culminates in final and binding arbitration before the Board.

Pursuant to its authority to set the standard for uniforms, Horizon's flight attendant manual states that "only Company issued or authorized pins may be worn."

The district court held that the dispute involved "the meaning and/or proper application of the terms of the collective bargaining agreement" and that "[s]uch disputes are considered 'minor' under the Railway Labor Act and are subject to administrative resolution." Accordingly, Horizon's motion to dismiss for lack of subject matter jurisdiction was granted.

## STANDARD OF REVIEW

We review the district court's dismissal for lack of subject matter jurisdiction de novo. *Sommatino v. United States,* 255 F.3d 704, 707 (9th Cir.2001). The district court's factual findings relevant to its determination of subject matter jurisdiction are reviewed for clear error. *La Reunion Francaise SA v. Barnes,* 247 F.3d 1022, 1024 (9th Cir.2001).

## ANALYSIS

■ AFA seeks declaratory and injunctive relief pursuant to Section 152, Fourth of the RLA, which states in part:

Employees shall have the right to organize and bargain collectively through representatives of their own choosing. The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this chapter. No carrier, its officers or agents, shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and *it shall be unlawful for any carrier to interfere in any way with the organization of its employees . . . .*

45 U.S.C. § 152 (emphasis added). "Case law tends to classify disputes that arise between carriers and employee unions under the RLA as either 'major' or 'minor.'" *Int'l Ass'n of Machinists and Aerospace Workers v. Alaska Airlines,* 813 F.2d 1038, 1039 (9th Cir.1987) (citations omitted). "Major disputes concern statutory rights, such as the right to form collective bargaining agreements or to seek to secure new rights and incorporate them into future agreements." *Id.* (citation omitted). "Federal courts have jurisdiction to decide major disputes." *Id.* (citation omitted). "Minor disputes, on the other hand, 'concern the interpretation or application of collective bargaining agreements, and are resolved through binding arbitration before the System Board of Adjustment.'" *Id.* at 1040 (quoting *Int'l Ass'n of Machinists v. Aloha Airlines,* 776 F.2d 812, 815 (9th Cir.1985)). "Federal courts do not have jurisdiction to resolve minor disputes." *Id.* (citations omitted).

AFA contends that the issue before the Court is whether Horizon flight attendants have a statutory right under Section 152 of the RLA to wear an AFA union pin while on duty. AFA asserts that federal courts have exclusive jurisdiction over statutory disputes arising from RLA violations.

To support its position, AFA relies on *Fennessy v. Southwest Airlines,* 91 F.3d 1359 (9th Cir.1996). In *Fennessy,* a Southwest Airlines employee brought an action alleging that the airline violated his statutory rights under Section 152, Fourth of the RLA by terminating him in retaliation for his efforts to replace the existing union. *Id.* at 1360–61. This Court reversed the district court's granting of summary judgment, finding that although Fennessy's grievance had been submitted to the Board, his complaint stated an independent statutory claim under Section 152, Fourth, which could be brought directly to

district court. *Id.* at 1361–62, 1365. In so ruling, this Court observed that the district court had jurisdiction over the dispute because "[i]f Fennessy's statutory rights have been violated, the fact that [his putative union] may represent him before the Adjustment Board does nothing to remedy that problem." *Id.* at 1363.

AFA's claim, however, ignores jurisdictional restraints placed on federal courts addressing claims brought directly under the RLA. From the "very first opportunity," the Supreme Court has interpreted Section 152, Fourth of the RLA as "addressing primarily the precertification rights and freedoms of unorganized employees." *Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants,* 489 U.S. 426, 440, 109 S.Ct. 1225, 103 L.Ed.2d 456 (1989). Precertification disputes are disputes that occur prior to the formation of a union. *See Wightman v. Springfield Terminal Ry. Co.,* 100 F.3d 228, 233–34 (1st Cir.1996). "The 1934 Act [enacting § 152, Fourth] was directed particularly at control over the initial step in collective bargaining-the determination of the employees' representatives." *Trans World Airlines, Inc.,* 489 U.S. at 441, 109 S.Ct. 1225(citing *Switchmen's v. Nat'l Mediation Bd.,* 320 U.S. 297, 317, 64 S.Ct. 95, 88 L.Ed. 61 (1943) (Reed, J., dissenting)). Judicial intervention in post-certification RLA cases has traditionally been limited to those instances where "but for the general jurisdiction of the federal courts there would be no remedy to enforce the statutory commands which Congress had written into the Railway Labor Act." *Trans World Airlines, Inc.,* 489 U.S. at 442, 109 S.Ct. 1225 (citing *Switchmen's v. Nat'l Mediation Bd.,* 320 U.S. 297, 300, 64 S.Ct. 95, 88 L.Ed. 61 (1943)). "These circumstances present situations where the essential framework for bargaining between management and the union has broken down."

*Ass'n of Prof'l Flight Attendants v. Am. Airlines,* 843 F.2d 209, 211 (5th Cir.1988).

This Court has recognized the dichotomy between pre-certification and post-certification disputes arising under the RLA. For example, in *Int'l Ass'n of Machinists and Aerospace Workers v. Alaska Airlines,* 813 F.2d 1038, 1039–40 (9th Cir.) *cert. denied,* 484 U.S. 926, 108 S.Ct. 290, 98 L.Ed.2d 250 (1987), we held that the post-certification RLA complaint brought by a union was properly dismissed where it involved a minor dispute and did not involve "a fundamental attack on the collective bargaining process" or a "direct attempt to destroy a union." Other circuits have also recognized that judicial intervention in post-certification RLA claims should ordinarily be limited to situations in which an employer's conduct has been motivated by anti-union animus or where circumstances exist that significantly undermine the functioning of the union, such as an attempt to interfere with an employee's choice of a collective bargaining representative or an act of intimidation that cannot be remedied by administrative means. *See Wightman,* 100 F.3d at 234. *See also Brotherhood of Locomotive Eng'rs v. Kansas City S. Ry. Co.,* 26 F.3d 787, 795 (8th Cir.1994); *Dempsey v. Atchison, Topeka and Sante Fe Ry. Co.,* 16 F.3d 832, 841–43 (7th Cir. 1994); *National R.R. Passenger Corp. v. Int'l Ass'n of Machinists and Aerospace Workers,* 915 F.2d 43, 50–51 (1st Cir.1990); *Indep. Union of Flight Attendants v. Pan Am. World Airways, Inc.,* 789 F.2d 139, 142(2d Cir.1986); *Int'l Ass'n of Machinists and Aerospace Workers v. Northwest Airlines, Inc.,* 673 F.2d 700, 708–09 (3d Cir. 1982).

AFA's reliance on *Fennessy* is misplaced because *Fennessy* involved a unique factual setting that justified judicial intervention. *Fennessy* actually involved a de facto precertification dispute because Fen-

nessy sought to replace the existing union with a new one. *Fennessy* did not reject the precertification/post-certification dichotomy recognized in earlier cases. In *Fennessy*, this Court recognized that Section 152, Fourth of the RLA has traditionally been viewed "as addressing primarily the precertification rights and freedoms of unorganized employees" and indicated that "once a bargaining representative is certified, the RLA dispute-resolution system is put in place and judicial intervention is generally unnecessary and undesirable." *Fennessy*, 91 F.3d at 1362–63 (citing *Trans World Airlines, Inc.*, 489 U.S. at 440–41, 109 S.Ct. 1225). This Court concluded that *Fennessy* was one of "those cases where 'but for the general jurisdiction of the federal courts there would be no remedy to enforce the statutory commands which Congress had written into the Railway Labor Act.'" *Id.* at 1363 (citation omitted).

██ Unlike *Fennessy*, the facts in this case do not reveal any "exceptional circumstances" necessitating judicial intervention, such as a policy motivated by anti-union animus or circumstances that significantly undermine the functioning of the union.[3] *See Alaska Airlines*, 813 F.2d at 1040. Furthermore, AFA erroneously argues that "but for the general jurisdiction of the federal courts there would be no remedy." As the district court indicated, the Board's interpretation of the AFA–Horizon CBA may dispose of this matter because if the Board finds that AFA negotiated away its members' rights to wear the AFA union pin, then the terms of the contract will govern. However, if the Board finds that the parties never reached an agreement

regarding the AFA union pins, then AFA may pursue its alleged right to wear the pin. AFA's argument that only federal courts can determine statutory rights is correct; however, the Board is not being asked to determine AFA's statutory rights. Rather, the Board is being asked to interpret the AFA–Horizon CBA because the validity of Horizon's policy will depend on whether the AFA–Horizon CBA restricts the wearing of AFA union pins. The Board has exclusive jurisdiction to interpret the AFA–Horizon CBA. *See Alaska Airlines*, 813 F.2d at 1040. AFA has not shown that the "essential framework for bargaining between management and the union has broken down" and that the Board is unable to resolve this dispute. *Ass'n of Prof'l Flight Attendants*, 843 F.2d at 211. Therefore, AFA has failed to allege "a statutory violation sufficient to invoke the federal courts' jurisdiction." *Alaska Airlines*, 813 F.2d at 1041.

The district court properly concluded that it lacked subject matter jurisdiction over AFA's post-certification complaint. Moreover, the facts of this case support the district court's conclusion that the issue presented by AFA is a minor dispute because Horizon's policy is "arguably justified" under the existing AFA–Horizon CBA. *See Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 307, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989) ("Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective-bargaining agreement.").

---

**3.** In fact, AFA did not specifically raise the issue of "anti-union animus" until its reply brief, and even then, AFA did not argue the issue with any particularity. At most, AFA's fact section mentioned that Horizon allows its pilots and mechanics to wear their union pins. However, pilots and mechanics are not as publicly visible as flight attendants, and Horizon may have a legitimate reason for prohibiting the flight attendants from wearing their union pins while on duty.

## CONCLUSION

The district court properly concluded that the dispute concerning AFA's members' rights to wear AFA union pins fell within the AFA–Horizon CBA and was a matter for arbitration rather than district court litigation. The district court's order of dismissal is affirmed.

**AFFIRMED.**