Patrick **FENNESSY**, Plaintiff–Appellant,

v.

**SOUTHWEST AIRLINES,**
Defendant–Appellee.

No. 94–55630.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 13, 1995.

Decided Aug. 7, 1996.

**1360**

Lisa L. Maki, Roxanne A. Davis, Los Angeles, California, for plaintiff-appellant.

Kathleen O. Peterson, Preston, Gates & Ellis, Los Angeles, California, for defendant-appellee.

Before: FLETCHER, CANBY, and HAWKINS, Circuit Judges.

CANBY, Circuit Judge:

Patrick Fennessy claims that Southwest Airlines Co. violated section 152, Fourth of the Railway Labor Act ("RLA" or "the Act"), 45 U.S.C. §§ 152–188, by terminating his employment in retaliation for his efforts to

replace his existing union with a different one. Fennessy appeals the district court's grant of summary judgment in favor of Southwest. We reverse.

## I.

While employed as a ramp agent for Southwest, Fennessy became a member of the Ramp Operations & Provisioning Agents ("ROPA"), as required by the parties' Collective Bargaining Agreement. ROPA has been the recognized collective bargaining representative for Southwest ramp agents since 1988. Asserting that he was dissatisfied with ROPA's representation, Fennessy unsuccessfully engaged in efforts to organize support for representation by the Teamsters Union.

While driving a baggage cart as part of his duties as a ramp agent for Southwest, Fennessy struck an aircraft, causing a superficial 18–inch scratch on the plane's surface and a brief delay before a take-off. Southwest subsequently held a factfinding session concerning that accident, after which Fennessy's employment was terminated. The stated reason for Fennessy's termination was his striking the aircraft and failing to report it in accordance with Southwest's policy.

Following the accident, Fennessy sought and obtained the assistance of the ROPA representative. Upon completion of Southwest's factfinding session, Fennessy filed a grievance through ROPA concerning his termination. After a hearing, a Systems Board of Adjustment, consisting of two members of Southwest's management and two ROPA members, upheld Fennessy's termination.

Fennessy then brought this action in district court, alleging that Southwest violated 45 U.S.C. § 152, Fourth, by terminating his employment in retaliation for his having engaged in activities to replace ROPA with a Teamsters representative. On appeal, Fennessy also contends that ROPA did not fairly represent him in the Adjustment Board hearing.

## II.

■ Congress adopted the RLA to provide "a comprehensive framework for the resolution of labor disputes in the railroad industry." *Atchison Topeka & Santa Fe Ry. Co. v. Buell,* 480 U.S. 557, 562–63, 107 S.Ct. 1410, 1414, 94 L.Ed.2d 563 (1987).[1] The Act's coverage has been extended to airlines. 45 U.S.C. § 181. The Act sets forth procedures for dealing with both "major" and "minor" disputes. Major disputes are those arising " 'out of the formation or change of collective [bargaining] agreements covering rates of pay, rules, or working conditions.' " *Buell,* 480 U.S. at 562–63, 107 S.Ct. at 1414 (internal quotations omitted) (citation omitted.). Minor disputes "grow[ ] out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." *Id.* at 563, 107 S.Ct. at 1414 (quoting 45 U.S.C. § 153 First (i) (internal quotes omitted); *see also Consolidated Rail Corp. v. Railway Labor Executives' Ass'n ("Conrail"),* 491 U.S. 299, 302–04, 109 S.Ct. 2477, 2480–81, 105 L.Ed.2d 250 (1989) (distinguishing between major and minor disputes). The parties agree that Fennessy's claim is not a major dispute.

The parties disagree, however, as to whether Fennessy's discharge involves a minor dispute. The answer depends upon how the dispute over the discharge is framed. The grievance that Fennessy submitted, through ROPA, to the Adjustment Board unquestionably was a minor dispute. The issue was whether Fennessy's termination was based on proper cause within the meaning of the collective bargaining agreement. *See Conrail,* 491 U.S. at 307, 109 S.Ct. at 2483 ("[D]ispute is minor if the action is arguably justified by the terms of the parties' collective bargaining agreement."); *see also Hawaiian Airlines, Inc. v. Norris,* —— U.S. ——, ——, 114 S.Ct. 2239, 2245, 129 L.Ed.2d 203 (1994). No claim was raised in these proceedings, or asserted by Fennessy at the time, that his discharge was in retaliation for his organizing activities.

■ The Adjustment Board's decision is binding on Fennessy with regard to what it

---

**1.** We review a grant of summary judgment *de novo, Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

decided: that his discharge did not violate the collective bargaining agreement. Judicial review of the Adjustment Board's decision of such a minor dispute is "among the narrowest known to the law." *Buell*, 480 U.S. at 563, 107 S.Ct. at 1414 (internal quotations omitted) (citation omitted). The Board's findings and order may only be set aside for a failure of the Board to comply with procedural or jurisdictional requirements of the Act, for fraud, or for corruption. 45 U.S.C. § 153, First(q).

■ Fennessy did not seek review of the Board's decision, however. Instead, he brought this action in district court, alleging that his discharge was in retaliation for his Teamster organizing activities and that it accordingly gave rise to an independent statutory claim under 45 U.S.C. § 152, Fourth. Section 152, Fourth provides:

> Employees shall have the right to organize and bargain collectively through representatives of their own choosing.... No carrier, its officers or agents, shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees ... or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization....

45 U.S.C. § 152, Fourth. Fennessy argues that Southwest Airlines terminated him in order to interfere with his right to organize the labor organization of his choice. Fennessy contends that, because his claim is based on a statutory provision rather than on the collective bargaining contract, it is not a minor dispute that must be brought to a Board of Adjustment; it is a statutory claim that he may bring directly in district court.

Fennessy is correct. If there was any doubt before whether a statutory claim could constitute a minor dispute, it was dispelled by *Hawaiian Airlines v. Norris*, —— U.S. ——, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). *Norris*, which was decided after the district court ruled in this case, involved a question whether state-law claims of discharge in violation of public policy and discharge in viola-

tion of a "whistleblowers' protection" statute were preempted by the RLA. The discharged worker had unsuccessfully grieved his discharge under the adjustment process, and then had sued in state court. In holding the claims not preempted, the Supreme Court first had to address the question whether the claims were "minor disputes" that were subject exclusively to the RLA grievance process, which would preempt state law. It expressly rejected the defendants' argument that " 'grievances' should be read to mean all employment-related disputes, including those based on statutory or common law." *Id.* at ——, 114 S.Ct. at 2244. Instead, the Court held that "the category of minor disputes contemplated by § 151a are those that are grounded in the collective-bargaining agreement." *Id.* at ——, 114 S.Ct. at 2245; *see also Conrail*, 491 U.S. at 307, 109 S.Ct. at 2482–83. Accordingly, "the RLA's mechanism for resolving minor disputes does not pre-empt causes of action to enforce rights that are independent of the CBA." *Norris*, —— U.S. at ——, 114 S.Ct. at 2246. Thus the mere fact that Fennessy's discharge could be grieved on contractual grounds under the CBA does not mean that his statutory claim under the RLA is a minor dispute.

■ The fact that Fennessy's claim is not a minor dispute does not ensure his success on this appeal, however. *Norris* is distinguishable from this case, because it dealt with common-law or statutory claims arising wholly apart from the RLA. Here, Fennessy attempts to assert a private right of action under section 152, Fourth of the RLA. Wholly apart from the "minor dispute" issue, his ability to avail himself of that remedy depends upon the reach of section 152, Fourth and whether it extends to the circumstances of Fennessy's case.

Section 152, Fourth has been viewed "as addressing primarily the precertification rights and freedoms of unorganized employees." *Trans World Airlines, Inc. v. Independent Fed'n of Flight Attendants*, 489 U.S. 426, 440, 109 S.Ct. 1225, 1234, 103 L.Ed.2d 456 (1989). The reason is that, once a bargaining representative is certified, the RLA dispute-resolution system is put in place and

judicial intervention is generally unnecessary and undesirable. *Id.* at 441, 109 S.Ct. at 1234–35. For this reason, the district court concluded that section 152, Fourth offered no private right of action to Fennessy, because a union had been certified to represent him and the grievance procedure was available and utilized.

The difficulty with this view is that the grievance procedure is designed, as *Norris* indicates, to deal with *contractual* issues arising under the collective bargaining agreement. *Norris*, —— U.S. at ——, 114 S.Ct. at 2245. If Fennessy's statutory rights have been violated, the fact that ROPA may represent him before the Adjustment Board does nothing to remedy that problem. Judicial recognition of his cause of action would therefore seem to be one of "those cases where 'but for the general jurisdiction of the federal courts there would be no remedy to enforce the statutory commands which Congress had written into the Railway Labor Act.'" *Trans World Airlines,* 489 U.S. at 441, 109 S.Ct. at 1235 (quoting *Switchmen's v. National Mediation Bd.,* 320 U.S. 297, 300, 64 S.Ct. 95, 96–97, 88 L.Ed. 61 (1943)).

Southwest contends, however, that recognition of a private right of action for employees who have a bargaining representative will utterly defeat Congress's intent in the RLA "to keep railroad labor disputes *out of the courts." Lewy v. Southern Pac. Transp. Co.,* 799 F.2d 1281, 1289 (9th Cir.1986). For this reason, Southwest argues, the cases that recognize a private right of action either are limited to claims brought by employees prior to certification of a collective bargaining representative, or depend upon a violation of the right of fair representation that distorted the grievance process.

Our reading of the cases does not bear out Southwest's contention. It is quite true that some courts have expressed considerable uneasiness in recognizing a private right of action for employees who have a bargaining representative. Perhaps most explicit is *International Ass'n of Machinists v. Northwest Airlines, Inc.,* 673 F.2d 700 (3rd Cir.1982). There a union sued an airline for several disciplinary actions that it contended were designed to undermine the union's represen-

tation. The disciplinary actions were initially grieved. The Third Circuit discussed the precertification emphasis of section 152, Fourth, and stated that it found a lack of authority for entertaining an action under that statute when a collective bargaining agreement was in existence. *Id.* at 709. It added, however: "We do not foreclose the possibility that given the appropriate case and the appropriate circumstances such an action could be brought in federal court." *Id.* Moreover, the court denied the right of action only because the employer's affidavits denying anti-union motivation went uncontroverted. *Id.* at 710–12.

Our seminal decision under section 152, Fourth was *Burke v. Compania Mexicana De Aviacion, S.A.,* 433 F.2d 1031 (9th Cir. 1970). *Burke* involved a claim where the grievance procedure was unavailable, and we made some point of that fact:

> [Burke] was discharged [from his employment] before he was able to extend union coverage to his unit. Thus he is not a member of the union, and the union has no duty or desire to represent him. If Burke cannot sue to enforce the Act, no one can. Such a result is inconsistent with Congress' concern that [§ 152, Fourth] be backed by adequate penalties and could not have been intended.

*Id.*

We relied on no such rationale, however, when later we entertained an action under section 152, Fourth in *Arcamuzi v. Continental Air Lines, Inc.,* 819 F.2d 935 (9th Cir. 1987). In that case, we permitted union pilots returning to work after the conclusion of a strike to seek to enjoin polygraph examinations that they alleged were imposed as anti-union discrimination. We stated that "[a]n implied right of action exists under this section." *Id.* at 936; *see also Price v. PSA, Inc.,* 829 F.2d 871 (9th Cir.1987) (citing *Arcamuzi* for proposition that "[t]his circuit has held that an implied private right of action exists under RLA [§ 152, Fourth]."), *cert. denied,* 486 U.S. 1006, 108 S.Ct. 1732, 100 L.Ed.2d 196 (1988). We did not discuss whether a certified bargaining representative existed or whether a grievance procedure was in place; we simply applied the statute.

Other cases relied upon by Southwest also do not appear to depend upon an absence of a collective bargaining representative. In *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922 (1st Cir.1983), the First Circuit upheld a private right of action for an inspector who was discharged because he sought to organize the inspectors. No bargaining representative appears to have been certified, but the First Circuit did not mention that point. In rejecting the employer's contention that section 152, Fourth was only enforceable by criminal proceedings, the court simply noted that every court that had considered the question had found an implied right of action under section 152, Fourth. *Id.* at 924.[2]

We find the same phenomenon when we examine the post-certification cases that Southwest asserts are dependent upon a finding of a violation of the duty of fair representation. In *Roscello v. Southwest Airlines Co.*, 726 F.2d 217 (5th Cir.1984), an operations agent sued the airline under section 152, Fourth. He had attempted without success to organize the agents under the Teamsters. The airline recognized a competing union, and three days later fired the agent. He grieved his discharge through the new union without success. He then sued the airline and added an unfair representation claim against the new union. The Fifth Circuit held that the agent was entitled to a jury trial on his unfair representation claim, and with regard to the statutory claim noted:

> The parties do not question whether the plaintiff has a private right of action for wrongful discharge under the Railway Labor Act. Therefore we assume without deciding that plaintiff has properly stated a claim. Furthermore, there seems to be no doubt that this claim, which rests not upon a collective bargaining contract, but

upon a charge that Southwest violated the statute, was within the jurisdiction of the district court rather than an adjustment board.

*Id.* at 220 n. 2 (internal citations omitted). No mention was made of the necessity for an unfair representation claim to accompany the section 152, Fourth claim.

Similarly, in *Conrad v. Delta Air Lines, Inc.*, 494 F.2d 914 (7th Cir.1974), the Seventh Circuit entertained a claim under section 152, Fourth of a probationary pilot who had been discharged. The union had refused to grieve his discharge, and he added a claim against it for violation of the duty of fair representation. The court of appeals held that the pilot had raised a triable issue of fact on his section 152, Fourth claim, but *had not* raised a triable issue against the union for violation of the duty of fair representation. *Id.* at 917–19. *Conrad* accordingly cannot be said to depend on a requirement of a fair representation violation; quite the contrary, it demonstrates that a triable statutory claim can be brought in the absence of such a violation.

There is a common-sense reason why these cases do not depend on a violation of the right of fair representation in order for an employee to maintain a private action under section 152, Fourth. Because the Board of Adjustment has no jurisdiction over the statutory claim, fair representation in the grievance proceeding is of no use to the statutory-claim plaintiff.

It is fortunate for Fennessy that a viable fair representation claim is not a requisite for maintenance of a private action under section 152, Fourth. Fennessy did not raise an unfair representation argument until he reached this court. He pleaded no claim of violation of the right of fair representation, and he laid no evidentiary groundwork in the

---

**2.** Because we believe the outcome of this appeal is controlled by cases in which we have previously recognized a private right of action under § 152, Fourth of the RLA, we do not analyze Fennessy's assertion of a private right of action under the standards enunciated in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). *Cf. Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922 (1st Cir.1983)(applying *Cort* to question of whether plaintiff could maintain a private right of action under the RLA § 152,

Fourth). We recognized a private right of action under § 152, Fourth before *Cort, see Burke v. Compania Mexicana De Aviacion, S.A.*, 433 F.2d 1031, 1033—34 (9th Cir.1970), and have followed our holding in *Burke* after *Cort, see, e.g., Arcamuzi v. Continental Air Lines Inc.*, 819 F.2d 935, 936 (9th Cir.1987)(citing *Burke* for proposition that "[a]n implied right of action exists under [§ 152, Fourth of the RLA]."). *See generally Stepanischen*, 722 F.2d at 925—27 (concluding that our reasoning in *Burke* survived *Cort*).

district court to support such a claim. Consequently, no unfair representation claim is properly before us.

## III.

In summary, we conclude that Fennessy has a private right of action under section 152, Fourth, and that his statutory claim is not a minor dispute. The district court, acting without the benefit of the Supreme Court's recent decision in *Norris,* erred in ruling to the contrary. We therefore reverse its judgment and remand for further appropriate proceedings. We decline to rule on other issues not reached by the district court.

### REVERSED AND REMANDED.