LOCAL UNION NO. 2000, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AFL–CIO, Plaintiff,

v.

NORTHWEST AIRLINES, INC., Defendant.

No. CIV.A 98–40308.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 1, 1998.

**752**

Barbara M. Harvey, Detroit, MI, for Plaintiff.

Richard J. Seryak, Miller, Canfield, Detroit, Timothy R. Thornton, Briggs & Morgan, Minneapolis, MN, for Defendant.

*MEMORANDUM OPINION AND ORDER DISMISSING PLAINTIFF'S COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION*

GADOLA, District Judge.

Plaintiff, Local Union No.2000 of the International Brotherhood of Teamsters (the "Union"), filed this action against defendant, Northwest Airlines, Inc. ("NWA"), on August 31, 1998. At that same time, plaintiff also filed applications for a temporary restraining order and a preliminary injunction. On Sep-

tember 1, 1998, this court entered an order denying plaintiff's application for a temporary restraining order. On September 3–4, 1998, this court held an evidentiary hearing related to plaintiff's motion for a preliminary injunction. On September 9, 1998, this court entered a formal order denying plaintiff's motion for preliminary injunction. In its submissions, defendant has asserted that this court lacks subject matter jurisdiction over the instant dispute. This court informed the parties that it would consider defendant's claim as a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1). The parties have now had an opportunity to fully brief their positions related to this court's subject matter jurisdiction, and this court is prepared to rule on that issue. For the reasons set forth below, this court will dismiss plaintiff's complaint for lack of subject matter jurisdiction.

**Factual Background**

Plaintiff Union is the exclusive bargaining representative for all flight attendants employed by defendant, Northwest Airlines, Inc. ("NWA"). The secretary-treasurer of the Union is Danny Campbell. Robert Krabbe and Eric Smatana are two of the four Detroit base union representatives. Campbell, Krabbe and Smatana are all employees of NWA on union leave of absence.

Prior to August 24, 1998, the labor organization representing the pilots employed by NWA announced the possibility of a pilots' strike beginning at 12:01 a.m. Saturday, August 29, 1998. At various times on August 24, 26, 27 and 28, 1998, Krabbe, Campbell, and/or Smatana were present in a NWA flight attendant "crew lounge" at Detroit Metropolitan Airport to distribute contact information and informational flyers, as well as to answer questions from NWA flight attendants about the impending strike.[1] Plaintiff alleges that representatives from NWA management repeatedly entered the area and directed the Union representatives either to cease such activity or leave the premises.

---

1. The precise parameters of the NWA flight attendant crew lounge at Detroit Metropolitan Airport are the subject of considerable dispute among the parties. The bulk of the dispute seems to surround the classification of a certain portion of the front lobby area of NWA's "Inflight" facility. Ultimately, resolving whether that portion of the front lobby is a "crew lounge" is not essential to the analysis contained in this opinion.

On August 27, 1998, NWA management representatives inspected the written materials that the Union representatives were distributing in the crew lounge, and expressly authorized the distribution of those materials. However, the management representatives specifically indicated to the union representatives that they were not to advise flight attendants against using the company's Voice Response Unit ("VRU").[2] Later in the day, management apparently became aware that the union representatives were, in fact, advising flight attendants not to use the VRU. At that point, certain members of NWA management, including Jamie Friend, entered the crew lounge area and began "shadowing" the union representatives. From the testimony before this court, it appears that the management personnel did not interrupt or directly contradict any statements by the union representatives except for those related to the use of the VRU.

Despite the fact that management had authorized the leaflets earlier that day, NWA management representatives allegedly called the Wayne County sheriff to request that Krabbe and Campbell be ejected from the premises because they had failed to obtain a permit to leaflet in the airport. However, when Krabbe and Campbell attempted to obtain a permit to leaflet, they were informed by airport officials that permits were only required for leafleting in public areas of the airport. The position of the airport officials was that NWA's "In-flight" facilities, including the flight attendant crew lounge, are on the premises of NWA. This court notes that, though the lease between Wayne County, which owns the airport, and NWA was not offered into evidence, this court will infer

from all of the evidence presented that the crew lounge areas are, in fact, a part of the premises leased by NWA from Wayne County.

On that same day, NWA presented Krabbe and Campbell with letters that provided, in relevant part:

"As you know, Rule 19 of the Rules of Conduct for Employees of Northwest Airlines prohibits the conduct of union activities on Company premises without the express authorization of management, unless that activity is otherwise required to be permitted by a collective bargaining agreement or the Railway Labor Act. Rule 20 prohibits the distribution of informational material under the same circumstances.[ [3]]

Your conduct on more than one occasion has violated these rules. In one case, the Company was forced to call security to have you removed from its premises. This behavior on your part will no longer be tolerated. . . .

Additional action will be taken as necessary under the circumstances but may include investigation and discipline, up to and including discharge."

(Pl.comp., Exh. E.)

On August 28, 1998, management revoked its authorization of the leaflets being handed out by the Union representatives. Campbell and Krabbe arrived on the premises to present management with a grievance related to ¶ 24(C) of the parties' collective bargaining agreement. Paragraph 24(C) of the parties' collective bargaining agreement provides, in relevant part:

**2.** The VRU is an automated system which is designed to notify flight attendants of schedule changes and other information when they are away from their bases. The Union has expressed some grave concerns over certain features of the VRU.

**3.** The Rules of Conduct for Employees of Northwest Airlines provide, in relevant part:
19. Solicitation and Organizational Work
No person shall solicit members to join a union, engage in union organizational work or participate in other union activities on Company premises or on Company time, except as may be expressly authorized by management;

or as may be permitted by an express provision of the applicable collective bargaining agreement; or as may be required to be permitted by the Railway Labor Act.
20. Posting and Distribution of Materials
Except as may be permitted by an express provision of the applicable collective bargaining agreement, or as may be required to be permitted by the Railway Labor Act, the wearing, distributing, posting or affixing to Company property of any notices, petitions, literature, buttons, patches, insignia, stickers or other informational materials, without the express permission of management is prohibited.

Lounges

The Company **shall** provide suitable, furnished lounges for exclusive use of Flight Attendants at **all Flight Attendant base stations.** In the event that the Company establishes new bases for Flight Attendants, lounge facilities **shall** be provided within a reasonable period of time.

(Prelim. Inj. Hr'g, Def. Ex. 1 at 24.1 (emphasis in original).) The grievance is specifically directed at the conduct of Jamie Friend in the crew lounge areas. Though plaintiff asserts that the representatives did nothing more than present the grievance, NWA again summoned the Wayne County Sheriff's Department to remove Krabbe and Campbell from the crew lounge.

On August 29, 1998, Krabbe and Campbell were presented with letters that reiterated the fact that Rules 19 and 20 of the Rules of Conduct for Employees of Northwest Airlines prohibit union activity on NWA property unless expressly authorized by NWA. The letters also ordered the representatives to submit a court reported statement at company headquarters. The letters also indicated that the representatives would be "withheld from service" pending the investigation of management's charges against them.

On August 31, 1998, plaintiff filed the instant action, along with applications for a temporary restraining order and preliminary injunction. Essentially, plaintiff asks this court to enjoin NWA from prohibiting union activity in its crew lounges, force NWA to reinstate Krabbe and Campbell, and to prevent NWA from otherwise interfering with the flight attendants' right to engage in union activities in crew lounges.

**Discussion**

Plaintiff contends that this court has jurisdiction over the instant case based on the provisions of 28 U.S.C. § 1331, because this suit presents a federal question, namely whether defendant has violated the provisions of the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151a(2) and 152, Fourth.[4]

Disputes under the RLA are classified into two broad categories: major disputes and minor disputes. Major disputes involve the formation or modification of collective bargaining agreements, while minor disputes involve grievances or the interpretation of collective bargaining agreements. *See International Assoc., of Machinists v. Alaska Airlines, Inc.,* 813 F.2d 1038, 1039–40 (9th Cir.1987). Federal courts do not have subject matter jurisdiction over minor disputes because those disputes are within the exclusive jurisdiction of the National Adjustment Board established under the RLA. *See National Railroad Passenger Corp. v. International Assoc. of Machinists,* 915 F.2d 43, 50 (1st Cir.1990)(citing *Andrews v. Louisville and Nashville R.R.,* 406 U.S. 320, 322, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972)). Plaintiff concedes that the grievance it filed related to ¶ 24(C) of the collective bargaining agreement is a minor dispute because it involves the interpretation of the collective bargaining agreement. However, plaintiff contends that this court has subject matter jurisdiction over this case because plaintiff is alleging a direct statutory violation of the RLA.

There is support for plaintiff's claim that this court would have jurisdiction over a properly set forth claim of a direct statutory violation. *See Hawaiian Airlines v. Norris,* 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994)(citing *Conrad v. Delta Air Lines,* 494 F.2d 914 (7th Cir.1974)). However, plaintiff is unable to establish such a statutory violation of the RLA in this case.

Plaintiff contends that NWA engaged in violations of 45 U.S.C. § 151a(2), as well as 45 U.S.C. §§ 152, Fourth. Section 151a sets forth the general purposes of the RLA, and it provides, in relevant part:

The purposes of the [RLA] are: . . . (2) to forbid any limitation upon freedom of association among employees or any denial as a condition of employment or otherwise, of the right of employees to join a labor organization . . . .

45 U.S.C. § 151a(2). Section 152, Fourth provides, in relevant part:

Employees shall have the right to organize and bargain collectively through represen-

---

4. It is well-settled that RLA applies to airlines. *See, e.g., Fennessy v. Southwest Airlines,* 91 F.3d 1359 (9th Cir.1996); *Conrad v. Delta Air Lines,* 494 F.2d 914 (7th Cir.1974).

tatives of their own choosing.... No carrier, its officers or agents, shall deny or in any way question the right of its employees *to join, organize, or assist in organizing the labor organization of their choice,* and it shall be unlawful for any carrier to interfere in any way with the organization of its employees, ... or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization ....

45 U.S.C. § 152, Fourth (emphasis added).

 Plaintiff contends essentially that NWA violated these sections of the RLA because NWA interfered with and coerced the union's chosen representatives, and because NWA infringed upon the employees' unfettered right of free association in its crew lounges. The problem with plaintiff's argument is that the Supreme Court has noted that these sections of the RLA address primarily the "precertification rights and freedoms of unorganized employees." *Trans World Airlines, Inc. v. Independent Federation of Flight Attendants,* 489 U.S. 426, 109 S.Ct. 1225, 1234, 103 L.Ed.2d 456 (1989); *see also National R.R. Passenger Corp. v. International Assoc. of Machinists,* 915 F.2d 43, 51 (1st Cir.1990). In other words, these sections of the RLA are designed to protect the rights of employees and unions in the context of a campaign to certify a bargaining representative, or to replace an existing bargaining representative. Here, plaintiff's complaint and the evidence presented to this court clearly indicate that plaintiff is already the exclusive bargaining representative of all NWA flight attendants. In post-certification cases, these sections of the RLA are implicated in only a limited set of circumstances.[5] As the First Circuit noted in *National R.R.:*

In a post-certification controversy ..., judicial intervention under Section 2 Third and Fourth is limited to circumstances where the employer's conduct has been motivated by anti-union animus or ... an attempt to interfere with its employees' choice of their collective bargaining representative, or constitutes discrimination or coercion against that representative, or involves acts of intimidation [which] cannot be remedied by administrative means .... Judicial intervention would also be permitted under [these sections] if the employer engaged in a fundamental attack on the collective bargaining process or a direct attempt to destroy a union.

*National R.R.,* 915 F.2d at 51 (internal citations omitted).

At the outset, plaintiff contends that the First Circuit applied the wrong standard in *National R.R.* Plaintiff asserts that the correct standard should be that federal courts have jurisdiction over a claim of a direct statutory violation of the RLA in all cases where "but for the general jurisdiction of the federal courts there would be no remedy to enforce the statutory commands which Congress [has] written into the [RLA]." *Trans World Airlines,* 489 U.S. at 441, 109 S.Ct. 1225. This court finds plaintiff's argument misplaced for two reasons. First, upon closer inspection, it is clear that the *National R.R.* standard and the standard proposed by plaintiff are essentially the same. The First Circuit's opinion in *Wightman v. Springfield Terminal Ry. Co.,* 100 F.3d 228 (1st Cir. 1996), illustrates this point. In that case, the court cited the precise language from *Trans World Airlines* that the plaintiff has offered in this case, and then went on to cite *National R.R.* as providing the specific circumstances that would give rise to a situation

**5.** This court notes that the vast majority of cases cited by the Union for the proposition that federal courts have jurisdiction over claims of statutory violation of the RLA are cases that arise out of *pre-certification* disputes. *See Roscello v. Southwest Airlines, Inc.,* 726 F.2d 217 (5th Cir.1984); *Stepanischen v. Merchants Despatch Transp. Corp.,* 722 F.2d 922 (1st Cir.1983); *Scott v. American Airlines, Inc.,* 488 F.Supp. 415 (E.D.N.Y. 1980); *Adams v. Federal Express Corp.,* 470 F.Supp. 1356 (W.D.Tenn.1979). These cases involved attempts to organize and certify a collective bargaining representative. Such cases fall within the explicit language of Section 2, Fourth of the RLA, and the fact that they arise out of pre-certification disputes makes them inapposite to the instant case. Plaintiff also relies heavily on *Fennessy.* In that case, the plaintiff alleged he was discharged because he had attempted to replace the existing bargaining representative with another union. Accordingly, *Fennessy* is also essentially a pre-certification case, rendering plaintiff's reliance on it misplaced.

where, but for the general jurisdiction of the federal courts, the aggrieved union would have no other remedy to enforce the terms of the RLA. *Id.* at 234.

Second, an overwhelming majority of courts that have been faced with issues similar to those presented in this case have applied the *National R.R.* standard, or its equivalent, to assess whether federal courts have jurisdiction over claims of a direct statutory violation of the RLA in post-certification disputes. *See Wightman,* 100 F.3d at 234; *Brotherhood of Locomotive Eng'rs v. Kansas City S. Ry. Co.,* 26 F.3d 787, 795 (8th Cir.1994); *Dempsey v. Atchison, Topeka and Santa Fe Ry. Co.,* 16 F.3d 832, 841–43 (7th Cir.1994); *Independent Union of Flight Attendants v. Pan Am. World Airways, Inc.,* 789 F.2d 139, 142 (2d Cir.1986); *International Assoc. of Machinists and Aerospace Workers,* 673 F.2d 700, 708–09 (3d Cir.1982); *Automotive, Petroleum and Allied Indus. Employees Union v. Trans States Airlines,* 926 F.Supp. 869, 873 (E.D.Mo.1996); *International Assoc. of Machinists and Aerospace Workers v. Varig Brazilian Airlines, Inc.,* 855 F.Supp. 1335, 1357–58 (E.D.N.Y.1994); *Carr v. Chicago, Cent. & Pac. R.R.,* 853 F.Supp. 282, 287–88 (N.D.Ill.1994). Given the substantial authority in support of applying such a standard in post-certification disputes, this court will reject plaintiff's argument and adopt the *National R.R.* standard in this case.[6]

Under this standard the level of anti-union animus required to justify federal court intervention in post-certification disputes is substantial. For example, in *Railway Labor Executives' Assoc. v. Boston & Maine Corp.,* 808 F.2d 150 (1st Cir.1986), the employer accepted the offer of its striking employees to return to work in the positions they held before the strike. However, the following week, the employer issued job abolishment notices to 725 employees that targeted spe-

cifically those employees who had engaged in the strike. *See id.* at 157–58. The court characterized this action as a "predetermined, and improper design to reduce the workforce *by eliminating strikers as employees.*" *Id.* at 155 (emphasis in original). Conversely, the court in *National R.R.* declined to find subject matter jurisdiction premised on the RLA when faced with allegations that the employer conducted disciplinary investigations of union representatives for merely discussing with management the propriety of drug testing of an employee, and that management had fabricated the claim that the work stoppage in that case was due solely to the instigation of one of the union representatives. The court found that even if these allegations were true, they did not "approach the kind of extraordinary anti-union animus found to exist in *[Railway Labor Executives Assoc. v. Boston & Maine Corp]* . . . ." *National R.R.* 915 F.2d at 53.

■ Here, there is certainly some evidence that there was anti-union animus on the part of NWA. Specifically, plaintiff has alleged that despite the fact that NWA authorized the leaflets being disseminated by Krabbe and Campbell on August 27th, management summoned the Wayne County Sheriff's Department to eject the union representatives on the basis that they had not obtained a permit for leafleting. Such an action also appears fatuous given NWA's claim that the crew lounge areas at Detroit Metropolitan Airport are its private premises, and not a public area. Moreover, the union has also alleged that its representatives were ejected from the crew lounge the following day when their only act had been to present a grievance to management concerning the application of ¶ 24(C) of the collective bargaining agreement. However, this court finds after two days of exhaustive testimony concerning the events that gave rise to this

---

6. This court does note that plaintiff has cited one post-certification case in which the court did not require a showing of any anti-union animus. In *Arcamuzi v. Continental Air Lines, Inc.,* 819 F.2d 935 (9th Cir.1987), the court did indicate that "the RLA statutorily protects the right of association and expression in union activities from interference by employers" (*Arcamuzi,* 819 F.2d at 939), and it did not limit that statement to the

pre-certification context. However, given the overwhelming weight of authority that indicates courts should not exercise jurisdiction over post-certification disputes absent a showing of anti-union animus or the presence of circumstances that significantly undermine the functioning of the union, this court declines plaintiff's invitation to extend *Arcamuzi* to cover this case.

dispute, that plaintiff has fallen far short of meeting its burden to come forth with evidence indicating anti-union animus at a level that would vest this court with jurisdiction under the RLA in this post-certification dispute.

It is clear from the evidence that defendant did not engage in a systematic, predetermined and improper campaign to undermine the Union. While it does appear that defendant did interfere with certain communications in the crew lounge areas, there is no evidence that defendant made any effort to interfere with any other method by which the Union could communicate with its members. NWA argues that its efforts were limited to preventing the Union from directly contradicting NWA's directive to its flight attendants that they must use the VRU. NWA also claims that it has a legitimate business reason to prevent such communications on its premises. Specifically, NWA has asserted that the VRU is essential to its operations because it is necessary to inform flight attendants of important scheduling changes when they are away from their bases. Various NWA management personnel testified that their sole intent was to prevent the union representatives from directly advising flight attendants in the crew lounge areas against using the VRU. Against this testimony, the Union did not produce any evidence from which a reasonable person could infer that NWA was engaged in an attempt to undermine the Union.

■ There is also no evidence to suggest that NWA has committed any acts of intimidation or coercion which cannot be remedied by administrative means. In the final analysis, this court is satisfied that the dispute between the parties about the use of the crew lounge areas and the rights of the union in those areas is a minor dispute subject to resolution through the National Adjustment Board pursuant to the RLA. The Union has contended that the CBA gives flight attendants the right to a crew lounge for their "exclusive use." In the Union's view, this gives the Union the unfettered right to disseminate information in the crew lounges to flight attendants who are not on duty. In response, NWA contends that the crew lounges are company "premises," and accordingly that NWA employees, including union members, may not disseminate union information or conduct union activities in the crew lounge areas without prior authorization from NWA, pursuant to Rules 19 and 20 of the Northwest Rules of Conduct. It seems clear to this court that resolving these contentions will involve interpretation of the parties' collective bargaining agreement. For example, an interpretation of the agreement is necessary to determine whether the crew lounge areas are company "premises" when viewed in conjunction with the "exclusive use" provision of ¶24(C). Also, there is the question of whether and to what extent Rules 19 and 20 of the Rules of Conduct are binding on NWA employees on union leave of absence. These and other questions central to this dispute are dependent on an interpretation of the parties' collective bargaining agreement. Accordingly, this court is satisfied that the current dispute is a minor dispute subject to the exclusive jurisdiction of the National Adjustment Board.

For the reasons set forth above, this court finds that plaintiff is unable to establish a direct statutory violation of the RLA in this case.

Therefore, this court finds that it does not have subject matter jurisdiction over plaintiff's claims in this case. Accordingly, this court will dismiss plaintiff's complaint.

This court having reviewed the submissions of the parties, and being fully advised in the premises,

**IT IS HEREBY ORDERED** that plaintiff's complaint is **DISMISSED** for lack of subject matter jurisdiction.

**SO ORDERED.**