[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-11120
Non-Argument Calendar

_____

D. C. Docket No. 0:11-cv-60284-RNS

ALLEN F. STEWART,

Plaintiff-Appellant,

versus

SPIRIT AIRLINES, INC., a defendant Corporation,
JOHN RICHARD DANCASTER,
individually and in his corporate capacity,
JOE HOUGHTON,
individually and in his corporate capacity,
LUCY SINGLETON,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 10, 2013)

Before TJOFLAT, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

Plaintiff Allen Stewart, proceeding pro se, brought statutory claims under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq.,[1] against Defendants Spirit Airlines, Inc., John Richard Dancaster, Joe Houghton, and Lucy Singleton. Plaintiff appeals the district court's dismissal of his complaint for lack of subject matter jurisdiction and for failure to state a claim. Plaintiff also appeals the district court's denial of his five motions for sanctions against Defendants. After review, we affirm.

## I.  BACKGROUND

### A.    Pilots' Collective Bargaining Agreement

Defendant Spirit Airlines, Inc. ("Spirit") employed Plaintiff Stewart as an airline pilot. While employed by Spirit, Stewart became a member of a union, the Air Line Pilots Association (the "pilots' union"). Defendant Spirit and the pilots' union maintain a collective bargaining agreement.

Under Section 19 of that collective bargaining agreement, a Spirit pilot is entitled to an investigative fact-finding meeting with the chief pilot and the pilot's union representatives prior to receiving discipline. After the meeting, the chief

---

[1]Stewart's second amended complaint raised numerous other claims under state law, but he has failed to pursue them on appeal. Therefore, we decline to consider them. Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008).

2

pilot renders a decision in writing.  The decision must state the facts, the precise charges, and the disciplinary action to be taken.

## B.    Stewart's January 5 Fact-Finding Meeting

On November 15, 2010, Plaintiff Stewart allegedly failed to comply with federal aviation regulations and company procedure during Flight 461.  On January 5, 2011, Stewart was required to appear at a fact-finding meeting initiated to investigate those allegations.  Stewart gave notice that he intended to record the meeting.

Stewart alleges that: (1) Defendant Spirit's representatives at the meeting included Defendant Chief Pilot John Richard Dancaster; (2) Stewart's recording device was plainly visible on the table; and (3) thus Defendants, including Dancaster, impliedly consented to the recording.

According to Stewart's complaint, a few days later Defendant Dancaster withdrew his consent to have the fact-finding meeting recorded and claimed the recording may have violated state law.

On January 21, 2011, Defendant Chief Pilot Dancaster initiated a second disciplinary investigation as a result of Stewart's "alleged insubordination/refusal to follow instructions, possible violation of state laws, and violation of Spirit policies on employee conduct in connection with [Stewart's] unauthorized

3

recording of discussions at the investigative meeting held . . . on January 5, 2011."

Dancaster's direct supervisor, Director of Operations Joe Houghton, agreed to

Dancaster's investigation.

## C.    Stewart's February 10 Fact-Finding Meeting

Subsequently, a second investigative fact-finding meeting took place on

February 10, 2011.  At the meeting, Defendant Dancaster "refus[ed] to bargain

while Stewart and Union Representative Frank Hann sought a Letter of Agreement

('LOA') to definitively dictate the manner in which a record could be made of

[investigative fact-finding] meetings."  Although the parties did not reach an

agreement on how to memorialize the meeting, Plaintiff Stewart also recorded the

February 10, 2011 meeting.

On February 17, 2011, Defendant Spirit terminated Stewart's employment

for insubordination and failure to adhere to management's directives stemming

from his recording of the January 5 fact-finding meeting.  Stewart, however,

claims that he was actually terminated because his recording efforts were not only

for his case but also intended to aid the pilots' union hearing procedures.

## D.    Procedural History

On July 5, 2011, Stewart filed a second amended complaint, alleging, inter

alia, retaliatory labor actions in violation of 45 U.S.C. § 152, Fourth of the RLA.

4

He named as defendants Spirit, Dancaster, Houghton, and Labor Relations Manager Lucy Singleton.  During the course of the litigation, Stewart filed five motions for sanctions against Defendants.

Defendants moved for dismissal.  A magistrate judge issued a report and recommendation (the "report") that concluded: (1) Stewart's RLA claims constituted  "minor disputes," which must be litigated exclusively before a labor adjustment board, and (2) thus the federal court lacked jurisdiction, warranting dismissal under Rule 12(b)(1).  See Fed. R. Civ. P. 12(b)(1).  Alternatively, the magistrate judge found that Stewart's allegations did not rise above "conjecture and bare-bones conclusions," warranting dismissal under Rule 12(b)(6).  See Fed. R. Civ. P. 12(b)(6).

The magistrate judge also recommended that the district court decline to exercise supplemental jurisdiction over Stewart's remaining state tort claims.  In separate reports, the magistrate judge recommended denying Stewart's motions for sanctions.

In an omnibus order issued on February 24, 2012, the district court adopted the magistrate judge's report, concluded that Stewart's objections to that report lacked merit, and granted Defendants' motion to dismiss.  The district court also denied the sanctions motions.

## II.  DISCUSSION

We first outline the nature of Stewart's statutory claims under the RLA.

### A.    The Railway Labor Act

The RLA was designed to avoid interruptions to commerce or to the operation of the railway or airline industries caused by labor management disputes.  See 45 U.S.C. § 151a(1);[2] see also Geddes v. Am. Airlines, Inc., 321 F.3d 1349, 1353-54 (11th Cir. 2003).  The RLA sets up a comprehensive alternative dispute resolution framework, placing exclusive jurisdiction of many labor management disputes within a system of adjustment boards.

Under the RLA, federal courts lack subject matter jurisdiction over disputes which are "grounded in the [collective bargaining agreement]," Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 256, 114 S. Ct. 2239, 2245 (1994), and "involve controversies over the meaning of an existing collective bargaining agreement in a particular fact situation," id. at 253, 114 S. Ct. at 2244 (internal quotation marks omitted).  Such disputes are labeled as "minor disputes" under the RLA and are subject to mandatory arbitration by the adjustment boards.  Id. at 253, 114 S. Ct. at 2244.  However, the RLA's alternative dispute resolution scheme does not

---

[2]In 1936, Congress extended the RLA to airline carriers.  See 45 U.S.C. § 181.  The parties do not dispute that Spirit is a carrier subject to the RLA.

preempt causes of action to enforce rights that are independent of the collective bargaining agreement, including statutory rights.  Id. at 256, 114 S. Ct. at 2246.

One statutory right under the RLA is found in § 152, Fourth which grants employees the right to organize a union and to collectively bargain.  Section 152, Fourth also provides, in pertinent part, that it is unlawful to "interfere in any way with the organization of its employees" as follows:

> No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees . . . .

45 U.S.C. § 152, Fourth.  Some courts have interpreted this provision to grant employees an implied private cause of action to sue when wrongfully discharged for participation in activities to organize a union in the workplace.  See, e.g., Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 318 (3d Cir. 2004) (collecting cases in which courts have recognized an implied private cause of action under sections of the RLA).[3]

However, § 152, Fourth has been narrowly interpreted in two important respects.  First, § 152, Fourth only protects employees in their efforts to join or

---

[3]Defendants do not contest that an implied private cause of action can exist in certain circumstances under § 152, Fourth.  Thus we assume, without deciding, that such a private right of action may exist.

7

organize a union.  For instance, while the National Labor Relations Act ("NLRA") specifically protects employees in efforts to seek improved terms and conditions of employment for "mutual aid or protection," see 29 U.S.C. § 157; New River Indus. v. N.L.R.B., 945 F.2d 1290, 1294-95 (4th Cir. 1991), the RLA does not.  Johnson v. Express One Int'l, Inc., 944 F.2d 247, 251-52 (5th Cir. 1991) (The RLA does not provide a basis for the plaintiff to have a coworker attend an investigatory interview because the RLA does not seek "to preserve employees' rights to act in concert for 'mutual aid or protection.' " In contrast to the NLRA, "the RLA protects the employees' right to establish a union."); see also Indep. Union of Flight Attendants v. Pan Am. World Airways, Inc., 789 F.2d 139, 141 n.2 (2d Cir. 1986) ("[T]he general restriction of the scope of the [RLA] to organizing and representational rights, as opposed to the broader 'concerted activity' rights . . . , is clearly supported by the legislative history.").  Thus, an employee's activities are protected under § 152, Fourth of the RLA only if the employee was attempting to "join, organize, or assist in organizing [a] labor organization," or to exercise his right to "organize and bargain collectively."  § 152, Fourth; see also, e.g., Johnson, 944 F.2d at 252; Herring v. Delta Air Lines, Inc., 894 F.2d 1020, 1023 (9th Cir. 1990) ("No private cause of action exists under the RLA for a group of employees who assert retaliatory conduct based upon employee activities which bear no

8

relationship to establishing a union . . . .").

Second, courts have narrowly circumscribed the instances in which an employee may bring a § 152, Fourth statutory claim after a union has been certified. As the U.S. Supreme Court has noted, § 152, Fourth primarily addresses the "precertification rights and freedoms of unorganized employees." Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants, 489 U.S. 426, 440, 109 S. Ct. 1225, 1234 (1989). This is because, once a union is certified, the RLA dispute resolution system is put in place and judicial intervention is generally unnecessary and undesirable. Id. at 441, 109 S. Ct. at 1234-35. Post-certification disputes are usually left to the alternative dispute resolution process described above.

Thus, our sister circuits have permitted judicial intervention in post-certification RLA cases in only limited circumstances. One circumstance includes "a fundamental attack on the collective bargaining process" or a "direct attempt to destroy a union." Air Line Pilots Ass'n, Int'l v. Guilford Transp. Indus., Inc., 399 F.3d 89, 103 (1st Cir. 2005) (internal quotation marks omitted). The other post-certification circumstance involves cases where the employer had anti-union animus and explicitly penalized an employee because of the employee's union activities. Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 234 (1st Cir.

9

1996); Bhd. of Locomotive Eng'rs v. Kan. City S. Ry. Co., 26 F.3d 787, 795 (8th Cir. 1994); see also, e.g., Atlas Air, Inc. v. Air Line Pilots Ass'n, 232 F.3d 218, 223-26 (D.C. Cir. 2000) (concluding § 152, Fourth was likely violated where the defendant carrier adopted a facially discriminatory policy that penalized employees by terminating their participation in a profit-sharing plan for no other reason than the employees' union participation); Conrad v. Delta Air Lines, Inc., 494 F.2d 914, 917-19 (7th Cir. 1974) (concluding a genuine issue of material fact remained as to whether the plaintiff was fired because of anti-union animus due to evidence that the defendant fired the plaintiff explicitly because of the plaintiff's over-activity with his union).

Accordingly, we must address two issues in order to resolve Stewart's RLA claims: (1) whether the district court lacked jurisdiction over the claims because they were "minor disputes" subject to mandatory arbitration; and (2) whether Stewart otherwise states a statutory cause of action under § 152, Fourth of the RLA. We turn to the jurisdictional issue.

**B.    Subject Matter Jurisdiction over the Railway Labor Act Claims**

On appeal, Stewart argues that the district court erred in dismissing his

RLA claims for lack of subject matter jurisdiction.[4]  The district court, adopting

the magistrate judge's report, determined that Stewart's claims were only "minor

disputes" under the RLA, subject to mandatory arbitration and divesting the

district court of jurisdiction.

Defendants argue, and the district court agreed, that Stewart's RLA claims

are "minor disputes" because they are grounded in the collective bargaining

agreement.   We agree too.

Here, Section 19 of the collective bargaining agreement is entitled

"Investigation, Discipline, and Disciplinary Grievances."  Section 19 provides the

specific and detailed procedures to follow in the event Spirit intends to discipline a

pilot and the rights the employee has in those disciplinary hearings.  For example,

the agreement explicitly provides that the Chief Pilot will render a written decision

after a fact-finding meeting is held.  That decision must include the facts found at

the meeting, the precise charges, and the disciplinary action that will be taken.

The agreement also contains deadlines for the issuance of a notice of investigation

and for the fact-finding meeting.  However, Section 19 affords the pilots no

individual right to record the fact-finding meeting.  The pilots' union could have

---

[4]We review a district court's dismissal for lack of subject matter jurisdiction under Rule
12(b)(1) de novo.  Maradiaga v. United States, 679 F.3d 1286, 1291 (11th Cir. 2012).

11

negotiated that term into the agreement, but it did not.

Despite Stewart's attempt to characterize his termination as a major dispute, his dispute is only a minor one subject to the RLA's alternative dispute resolution scheme. To hold otherwise would allow any fired employee to recast his termination as a "major dispute" and avoid RLA's arbitration scheme so long as he says he was fired for asserting a new contractual right he desires under the collective bargaining agreement. This holding also accords with the general principle that "if a reasonable doubt exists as to whether the dispute is major or minor, we will deem it to be minor." CSX Transp. Inc. v. Bhd. of Maint. of Way Emps., 327 F.3d 1309, 1321 (11th Cir. 2003). Accordingly, we conclude that Stewart's RLA claims are minor disputes not within the jurisdiction of the district court.

## C.    Rule 12(b)(6) Dismissal

Even if we were to conclude that the district court had subject matter jurisdiction over Stewart's claims, we agree with the district court's alternative conclusion that dismissal was appropriate because Stewart failed to state a statutory cause of action under 45 U.S.C. § 152, Fourth of the RLA.[5]

---

[5]We also review de novo a district court's grant of a motion to dismiss for failure to state a claim. Cinotto v. Delta Air Lines Inc., 674 F.3d 1285, 1291 (11th Cir. 2012).

12

As described above, some courts have permitted post-certification, anti-union animus claims under the RLA in limited circumstances. Defendants argue that Stewart's allegations fail to rise to the "substantial level" of anti-union animus necessary to bring a post-certification dispute within the jurisdiction of the district court.

In reviewing a motion to dismiss, courts must determine whether the pleadings contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). A claim is facially plausible when the court can draw "the reasonable inference that the defendant is liable for the misconduct alleged" from the pled facts. Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. We also must construe a pro se litigant's pleadings liberally. Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008).

Stewart argues that the standard governing retaliatory termination claims under the NLRA should apply to his anti-union animus claims under the RLA. See, e.g., Lebow v. Am. Trans Air, Inc., 86 F.3d 661, 665-66 (7th Cir. 1996); Roscello v. Sw. Airlines Co., 726 F.2d 217, 222 (5th Cir. 1984). Under that NLRA standard, Stewart would then need to show by a preponderance of the

13

evidence that his protected conduct under the RLA—his union-organizing activity—was a substantial or motivating factor in his termination. Lebow, 86 F.3d at 666. To establish a prima facie case, he must show that (1) he engaged in protected union activities; (2) the employer knew of his involvement in protected union activities; (3) the employer harbored animus toward those union activities; and (4) there was a causal connection between the anti-union animus and his termination. Id.

We need not decide what standard applies because Stewart fails to state a claim even under the NLRA standard he suggests. First, his activity—an effort to initiate a new custom or practice within Spirit of allowing employees to record fact-finding meetings—is not a union-organizing activity protected under § 152, Fourth. Second, even were his conduct protected, Stewart provides only conclusory allegations and no facts to support the proposition that any of the Defendants harbored anti-union animus. Such conclusory allegations are not sufficient to survive a Rule 12(b)(6) motion to dismiss. See Twombly, 550 U.S. at 555, 127 S. Ct. at 1964-95 ("a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions" (internal quotation marks omitted)). In sum, Defendants' actions did nothing to interfere with Stewart's right to organize or collectively bargain. Nor did Defendants' actions

14

come anywhere near a "fundamental attack on the collective bargaining process." Accordingly, Stewart's complaint dose not state a cognizable anti-union animus claim under § 152, Fourth of the RLA.

Stewart primarily relies on Fennessey v. Southwest Airlines, 91 F.3d 1359 (9th Cir. 1996), in support of his claims. But that case is inapposite. Fennessey involved a major pre-certification dispute—the plaintiff sought to replace the existing union with a new one. The plaintiff's conduct fell squarely within the protected activity described in § 152, Fourth: the plaintiff sought to create a new labor organization. The Ninth Circuit concluded that Fennessy "was one of those cases where 'but for the general jurisdiction of the federal courts there would be no remedy to enforce the statutory commands which Congress has written in to the [RLA].' " Ass'n of Flight Attendants, AFL-CIO v. Horizon Air Indus., Inc., 280 F.3d 901, 905-06 (9th Cir. 2002) (quoting Fennessy, 91 F.3d at 1363). That is not the case for Stewart. By all accounts, he was able to utilize the grievance process afforded under the RLA and received effective union representation. That is all the RLA seeks to protect.

Accordingly, we affirm the district court's dismissal of Stewart's complaint.

**D.      The Motions for Sanctions**[6]

On appeal, Stewart also argues the district court erred in denying his five motions for sanctions under Federal Rule of Civil Procedure 11.

"The purpose of Rule 11 sanctions is to reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers." Kaplan v. DaimlerChrysler, A.G., 331 F.3d 1251, 1255 (11th Cir. 2003) (internal quotation marks omitted). Courts assess such sanctions:

> (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose.

Id. (alterations omitted) (citing Massengale v. Ray, 267 F.3d 1298, 1301 (11th Cir. 2001)).

The rule incorporates an objective standard. Id. at 1255. Hence, courts determine whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified. Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1294 (11th Cir. 2002).

---

[6]We review rulings on Federal Rule of Civil Procedure 11 motions for sanctions for an abuse of discretion. Thompson v. RelationServe Media, Inc., 610 F.3d 628, 636 (11th Cir. 2010). Additionally, if a party fails to object to a magistrate judge's factual findings, this Court will not review challenges to those findings absent plain error or manifest injustice. Resolution Trust Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

The district court did not abuse its discretion in denying each of Stewart's five motions for Rule 11 sanctions. Stewart concedes that his first motion was properly denied as moot. His second and fifth motions both attacked arguments that, far from being frivolous, prevailed before the district court. Further, there is nothing to suggest that Spirit otherwise invoked these arguments in bad faith or for any improper purpose. Finally, Stewart failed to object to the magistrate's findings on his third and fourth motions, and is unable to demonstrate that these findings, which the record supported, resulted in manifest injustice.

## III. CONCLUSION

For these reasons, we affirm the district court's February 24, 2012 order dismissing Stewart's RLA claims and denying Stewart's motions for sanctions.[7]

**AFFIRMED.**

---

[7]Plaintiff Stewart's motion to remand for clarification is DENIED. Defendants' motion for attorney's fees is also DENIED.